CAWTHORN *versus* DEAS.

The master of a slave, is not liable for injuries, caused by the negligent conduct of such slave, while not acting in his master's employment, or under his authority.

This action was trespass on the case, brought by the defendant in error, in the Circuit Court of Henry. The plaintiff there, declared for an injury caused to his property, by the negligent conduct of the defendant's slaves.   The Court below, during the trial,

charged the jury, that it was not essential for the plaintiff to prove, that the slaves acted under their master's authority, but that, in presumption of law, slaves were always under the owner's control, and that he was liable for their negligent conduct. The jury, under this charge, returned a verdict in favor of the plaintiff, and by bill of exceptions the defendant brought his case to this Court.

PECK, for Plaintiff in error.—The charge of the Judge is too narrow. A master is only liable for an injury resulting from the negligence of his slave, while in pursuit of the master's business, or acting under his orders.—*Reeves*, 357—3 *Mass.* 385. The charge makes no distinction between an injury resulting from the negligence of a slave, whether he be, or be not, engaged in the business of the master, or whether he is, or is not, acting under his master's orders. Suppose a slave leave his master's quarters at night, without his consent, to fish or hunt; and while absent, should carelessly, with a torch, set the woods on fire, and a neighbor's crop, fence, or buildings be by that means destroyed: would the master be liable? If this be the law, it throws upon every slave holder a most fearful responsibility. But, this Court said, in the case of *Brandon* and *The Huntsville Bank*, " to make the master responsible for the torts of the slave, the slave must, at the time, be in the immediate employment of the master, or from the vicious habits of the slave, and his general liberty, some degree of culpability must attach to his master"—1 *Stewart*, 340.

By Mr. Justice THORNTON:

This is a writ of error, brought by the plaintiff, to

a judgment rendered for the defendant, in the Circuit
Court of Henry county, in an action of trespass on
the case ; instituted to recover damages from the plain-
tiff for an injury done to the defendant, by the slaves
of the plaintiff.    A bill of exceptions taken during
the progress of the cause, contains the following charge
given by the Court to the jury.    "It was only ne-
cessary in this action, for the plaintiff to prove, that
the corn was the property of the plaintiff, and that it
was destroyed by the negligence of the defendant's
slaves ; and that it was not necessary to prove that
the slaves acted under the express orders of the de-
fendant ; that in presumption of law, slaves are al-
ways under the control of the master ; and that mas-
ters are in law liable in this form of action, for the
negligent conduct of their slaves."    The only ques-
tion presented by the assignment of errors is the pro-
priety of this charge.    If the proposition, that the
master is liable for injuries accruing from the negli-
gent conduct of the slave, although not in his em-
ployment, or in the execution of his authority, be not
expressly announced in this charge ; yet such might
have been fairly deduced from it by the jury ; in
which case, as much as if it had been explicitly
declared ; if it be illegal, the assignment is well ta-
ken.    The doctrine of the charge, thus interpreted,
conforms to no code from whence we derive our no-
tions of jurisprudence—neither to the Common Law
of England, nor to the Civil Law.    According to the
former, the master is only liable for torts done in the
execution of his authority, or for damages flowing from
negligent conduct in his employment.[a]    According
to the latter, though the master be liable for any in-
jury or damage done by the slave, yet that liability is
limited to the value of the slave, it being always in

a 3 Bac. Ab. ti-
tle mast.& ser-
vant, K. 560—
2 Salk. 441.

the option of the master to pay the estimate of the damage done, or surrender the body of the slave as a recompense.[a]   It must be conceded that the Common Law upon this particular head, is not framed with reference to any such relation as exists in this country between owner and slave ; and that (though by no means identical,) the resemblance, is much greater, between the condition of slavery with us, and amongst the Romans, than between it, and any condition recognised by the Common Law.   It is apparent too, that by adopting the principles of the Common Law, as above cited, it will result from the peculiar nature of our slavery, that there is no redress, *civiliter*, for any injury done by a slave, not acting in obedience to his master's authority, express, or implied.   Punishment may operate as a preventive, but so far as remuneration is concerned, it is, as if the injury was effected by the natural elements of air, or fire.   By the Common Law we know, in case of injury to third persons, either the master, or servant, or both, were always responsible.   But notwithstanding all this, and many other discrepances not here adverted to ; upon the question of the liability of the master for the acts of the slave, I feel bound to adopt in this case, the principles of the Common Law, as applied to master and servant.   The Court below having departed from them in the charge excepted to, the judgment must be reversed, and the cause remanded.