## BABCOCK & BEENE v. HERBERT.

1. A public ferryman who, according to the statute of this State, has given bond, is a common carrier.
2. A license to keep a public ferry, on a navigable river, does not authorize the grantee of the ferry to place any obstruction across the stream on which the ferry is situated; and therefore, where a rope was stretched across a river to pull the ferry boat over, the owner of the ferry was held responsible for an injury arising from that cause.

Error to the Circuit Court of Dallas.

THIS was an action on the case in the Court below, by the defendant in error against the plaintiffs in error.

The declaration contains four counts. The first and second counts charge the defendants as public ferry-men, and common carries, with the loss of a sulkey, the property of the plaintiffs. The third and fourth counts, are as follows.

And for that, whereas, also, the said plaintiff heretofore, &c. was lawfully possessed of a certain other sulkey, of the value of two hundred and fifty dollars, and the defendants were also, then and there possessed of a certain other ferry-flat, used to run across the said Cahawba river, at the place aforesaid, for the

purposes aforesaid, which said ferry-flat of the said defendant's, was then and there under the care, government and direction, of three servants of the said defendants, who were then and there conveying the same across the river at the place appointed, to wit, from the opposite side of the river to the side on which the town is situated, in the usual manner, having received the certain other sulkey of the plaintiff, to be ferried across said river as aforesaid. Nevertheless, the said defendants, then and there, by their servants, so carelessly and improperly managed, governed and directed said ferry-flat containing said sulkey, to be ferried and conveyed across said river, that by and through the carelessness, negligence, unskilfulness and improper conduct of the defendants, by their servants, the said sulkey was cast and thrown overboard, into the said river, and lost and destroyed, &c.

And for that, whereas, also, the said defendants, before and at the time of the committing of the grievances hereinafter mentioned, were possessed of a certain ferry, situated and being in Dallas county, called the Cahawba ferry, being across the Cahawba river, and were also possessed of a certain other ferry below the Cahawba ferry, in said county, called the Alabama ferry, being the ferry across the Alabama river, both of which are public ferries, for all persons to go, return, pass and repass, with carriages, gigs, horses, &c. to wit, at the county aforesaid. Yet, said defendants, while so possessed of said ferries, to wit, at &c. wrongfully and unjustly placed and stretched a rope across the said Alabama river, at the said Alabama ferry, and immediately below the said Cahawba ferry, and wrongfully kept and continued the same, so placed and stretched across the said Alabama river, by means whereof, and in consequence of which negligent and improper conduct of the said defendants in that respect, afterwards, to wit, on, &c. at &c. a certain other sulky of the plaintiff, of great value, to wit, &c. then and there going and passing across said Cahawba ferry, in the ferry-flat, a boat of said defendants, was carried by the current of the Cahawba, down the stream, until it struck the said rope stretched across the Alabama river, as aforesaid, and was thereby thrown from said ferry-flat, into the river, and wholly lost to said plaintiff, at, to wit, &c. to his damage, &c.

The defendants demurred to each of the counts of the decla-

ration, which being overruled, and issue taken thereon, the jury found a verdict in favor of the plaintiff, upon which judgment was rendered.

From a bill of exceptions taken at the trial, it appears that the plaintiffs in error were joint owners and co-partners in a ferry at the junction of the Alabama and Cahawba rivers; that previous to the commencement of this suit, the plaintiffs in error were in the habit of stretching a rope across said rivers, to facilitate the passage of the boats; that the rivers at the time of the loss of the sulkey, were much swollen, particularly the Cahawba, which was much higher than the Alabama, and consequently running with great rapidity. That the force of the current compelled the hands on the flat to let go the rope across the Cahawba river, or be pulled into the stream; that the boat was washed down the Cahawba river, and in the attempt to pass under the rope, it caught the sulkey, and threw it into the river. There were three additional hands in the boat at the time of the accident.

The defendants counsel asked the Court to charge the jury,

1. That if they believed from the evidence, that the defendants had been guilty of no negligence in the management of the ferry at the time of the accident, and had done all in their power to prevent it, they were not responsible for the loss; which charge the Court refused to give.

2. That ferry-men in this State were not common carriers; which was also refused.

3. That no recovery could be had under the fourth count of the declaration; which the Court refused to give.

The Court charged that the law of common carriers was applicable to ferry-men, and that the owners of the ferry were not bound to attempt to cross the river, if it was in an impassable state, but had a right to wait, if such was the case, until the rivers fell, unless plaintiff consented to take the risk. To the refusals to charge, and to the charges given, the defendants counsel excepted, and now assign the same here for error— and also, the judgment of the Court on the demurrer to the pleas.

PECK AND CLARKE, for plaintiffs in error, contended that public ferry-men in this State, who have obtained a license and

given bond as the statute requires, cannot be charged as carriers at common law.   That if the ferry was well attended, and the loss happened without any negligence or want of care and attention on the part of the ferry-men, they are not liable for the loss.   They cited 1 Nott & McCord, 17.

THORNTON, contra, cited 4 Porter, 281; 2 Kent's Com. 419 ; 2 Nott & McCord, 19.

ORMOND, J.—Objections have been taken to the third and fourth counts of the declaration, but although not very formal, we think they are substantially correct.  It is supposed that the third count does not show that the plaintiffs in error had any. agency in the loss of the sulky, but that from the count it appears to have been the unauthorised act of their servants, for which they are not responsible, and the case has been assimulated to the doctrine established by this Court in Cawthorne v. Deas, 2 Porter, 276, where it was held, that "the master was not liable for injuries caused by the negligent conduct of his slave whilst not acting in his master's employment, or under his authority."

The language employed in this count is, "that the ferry-flat of the defendants was then and there under the care, government and direction of three servants of the said defendants, &c." We do not consider that it follows from the language used, that the agents of the defendants in the management of the boat, were slaves; but if that was the necessary inference, we think it sufficiently appears from the reference in this count to the previous counts (for the sake of brevity) by the use of the terms, "for the purposes aforesaid," that the servants of the defendants were in their employ, navigating the boat across the stream as a common ferry boat.

The fourth count charges the loss to have occurred from an obstruction thrown across the Alabama river, below the ferry on the Cahawba river, by the defendants.   It is supposed that, as the defendants were the owners of the lower ferry, also, and as it was a usual and common, if not necessary means of crossing the river, to stretch a rope from one side to the other, to pull the boat over by, that therefore, the plaintiffs in error are not responsible for an injury arising from that cause.

We cannot agree that a license to keep a ferry on any of our

navigable streams, authorizes the grantee of the ferry to place any obstruction across the stream, even if such were conven-ient or proper to the passage of the ferry boat. The license merely amounts to a monopoly of the right of transporting pas-sengers and property across the stream at that point, and this right must be exercised in subordination to other rights vest-ed in the people at large; among which is the right to navigate the rivers of the State, declared by law navigable, of which the Alabama river is one. As, therefore, this obstruction placed across the Alabama river, was unlawful, it subjects those plac-ing it there, to an action at the suit of any one injured by it, and the count was properly sustained.

. The question upon the merits is, whether the keeper of a public ferry is liable, as a common carrier? On the part of the plaintiffs in error, it is insisted that he is not, because the whole matter is regulated by the statute, pointing out his rights and duties, and requiring him to enter into bond with surety, for their performance.

The act, Aik. Dig. 363, § 26, authorises the County Court to establish ferries and fix the rate of toll or ferriage, on persons or property carried across the same, and requires the Court to take a bond, with surety, from the person so applying, in the sum of one thousand dollars, conditioned "that he will keep a good and sufficient boat or boats, and keep the banks on each side of the water course in good repair, and that the ferry shall be well attended for travellers or other persons to carry or pass their horses, carriages or effects, over such water course."— The law also provides, § 29, that any one detained at any pub-lic ferry by reason of the ferryman not having good and suffi-cient boats, or other proper craft, and hands, or by neglecting to do his duty, may, by action before any justice of the peace, recover the sum of ten dollars; and that such recovery shall not be a bar to any action for damages sustained by reason of the insufficiency of the ferry.

A common carrier, is one who undertakes for hire or reward, to transport the goods of such as choose to employ him from place to place; this is the definition adopted by Mr Justice Sto-ry, in his work on bailments, and is doubtless correct. This definition corresponds to the duties of a common ferryman, with one exception, which certainly cannot affect the question.

It is that those who employ him have no choice ; his right to transport the property of the traveller, is a monopoly granted by the State, and from that in part, results the right on the part of the State, to regulate his price, and to exact from him a bond, with surety, that he will provide, and always have in rea-diness, the means for transporting across the stream, the persons and effects of travellers. It by no means follows, that be-cause the State has for the security of the traveller, and as the price of the monopoly granted, exacted from the ferryman a bond, with surety, and stipulated for the rates of ferriage, that the common law liability which attaches to the carriage of goods for hire, does not arise. The bond and surety is an ad-ditional security afforded by the State, because of the public nature of the ferrymen's employment. Nor does the fact that the State regulates the rate or toll, at all affect the question. In England, a great many statutes have been passed, regula-ting the prices of the carriage of goods by common carriers, which may be seen enumerated in 1 Bacon's Ab. 557 ; and it never has been supposed that the passage of these acts varied their liability as common carriers, which arises from the pub-lic nature of their employment.

An argument has been urged on the Court, that the reason of the rule of the common law in regard to common carriers, does not apply to common ferrymen, and that they should be held only answerable for injuries arising from neglect. The answer to this is, that such has always been the law. See Rich v. Kneeland, Cro. James, 330, and the cases ancient and modern, cited in the notes by Mr Justice Story, in his work on Bailments, 323. It does not become a Court, when the law is clear and settled beyond a doubt, to speculate upon conse-quences. Arguments of that description are more properly ad-dressed to another forum. In conclusion, we are satisfied, that according to the ancient as well as modern authorities, ferry-men have always been considered as common carriers, and the circumstance, that in this State they are required to give bond, with surety, and that the price they receive is regulated by law, does not affect their liability at common law.

The last charge of the Court, that the defendants were not bound to cross the river if in an impassable state, we need not consider ; as the defendants did cross, the question did not arise,

and being purely abstract, could not by possibility, if decided wrong (which we do not intend to intimate) prejudice the defendants.

The judgment of the Court below is, therefore, affirmed.