## SLIMMER v. MERRY.

1. Ferry: FERRYMAN IS COMMON CARRIER. A public ferryman is a common carrier and subject to like duties and responsibilities.

2. —— LIABILITY TO INDIVIDUALS: CITY ORDINANCES. The fact that a ferryman may be liable to a city, whose ferry license he has obtained, for a violation of its ordinances in not keeping his boats in running order, does not bar an action against him by an individual who has sustained damage therefrom.

3. —— BOUND TO HAVE BOATS IN RUNNING ORDER. A licensed ferryman who undertakes to transport persons and property for hire across the Mississippi river, is considered as holding himself out to the world that he will transport all persons with their property who apply and pay their fare; and he is just as answerable in law for damages resulting from his failure (without legal excuse) to have his ferry boat in a proper condition for transportation, as he would be for those resulting from operating it in a negligent or careless manner.

4. —— LIABILITIES SAME AS CARRIER UPON HIGH SEAS. The rule which holds common carriers upon the high seas to a strict liability, applies with all its force, and with equal propriety, to carriers upon the inland waters of our country.

### *Appeal from Dubuque District Court.*

### WEDNESDAY, JULY 31.

IN this case the legal sufficiency of the petition is challenged by demurrer, which the court sustained, and the plaintiff, abiding the decision, appeals.

*Bissel, Shiras & Ballou* for the appellant.

A ferryman carrying on a public ferry for hire, is a common carrier. Angell on Common Carriers, §§ 82, 130, 165; *Whitmore* v. *Bowman,* 4 Greene, 148.

Where a person owns and runs a public ferry under a license, such ferry owner is bound by the conditions of his license, and also by the rules of the common law.

And if such ferry owner fails to keep and maintain his ferry as required by law, and thereby causes loss to any one, the person so injured has the right to maintain an action for such damage. *Richards* v. *Fugua,* 28 Miss. 792; *Albright* v. *Penn,* 14 Texas, 290; *May* v. *Hanson,* 5 Cal. 360; *Sanders* v. *Young,* 1 Head (Tenn.) 219.

And if it be a public ferry, and the tolls be regulated by law, and the ferryman be appointed by the State executive, and gives bond with sureties, this does not

prevent the liabilities of a common carrier from attaching to him. *Babcock* v. *Herbert*, 3 Ala. 392; 2 Parsons on Con. (5th ed.) 109.

*W. Weigley* for the appellee

Cited the following authorities in the course of his argument: *Lansing* v. *Smith*, 8 Cowen, 146; *Pierce* v. *Dart*, 7 Id. 609; *Butler* v. *Kent*, 19 Johnson, 225; 2 Parsons on Con. 649.

The additional expense of procuring other transit would furnish the measure of damages.. 8 M. & W. 373; Story on Bail, § 508; *Rawson* v. *Johnson*, 1 East. 203; 1 Parsons on Con. 648.

Lowe, Ch. J. — The petition develops this case. In November, 1856, the city of Dubuque, with power in its

**1. Ferry: ferryman is common carrier.** charter to license and establish ferries across the Mississippi river at that point, entered into a contract with George W. Jones and others, to keep and maintain a public ferry at Dubuque, with the Illinois shore at Dunlieth, for the term of ten years from and after the first day of April, 1858, the city reserving the right to regulate the rate of ferriage, and the licensees binding themselves to exercise all proper caution, care, skill and prudence, to accommodate all who may want to pass over said ferry, and so conduct and manage the same as to insure the safety, comfort and convenience of the traveling public. And the licensees further stipulate that within one year from the date of the contract, they would place on the said ferry a second steam ferry boat, equal in size, speed and capacity to the ferry boat called the A. S. Gregorie, then being operated; and to pay the city $100 per year for the franchise.

In the year 1861, the city council of Dubuque passed an ordinance fixing the rate of ferriage and regulating

the general running of the ferry, providing among other things, that the boat should leave the landing at Dubuque for the opposite shore every half hour during the day, from the first of April to the first of November of each year, and every hour during the remainder of the year when not prevented by ice, accident or dangers of navigation.

A violation of these provisions subjected the ferryman, under the ordinance, to a penalty of $5 to $20.

In March, 1864, the defendant in this action became the transferee of the foregoing contract, and the owner and manager of the ferry privilege under the original licenses.

It is alleged that early in October following, the plaintiff shipped on the Dubuque and Sioux City railroad, one hundred and nine head of beef cattle for the New York market. That when he reached Dubuque, it was his intent as well as his desire to have his beef stock crossed over the river at once to the opposite shore; that the defendant was unprovided with any suitable boat or other means for the transfer, and refused and neglected to ferry said cattle over the river within any reasonable time after their arrival in Dubuque. That he had not, as he was bound to have, as a public ferryman, any ferry boat in running order, or capable of crossing said river; that he failed to keep and maintain two ferry boats of like capacity with the A. S. Gregorie as stipulated in said contract, but only one boat, and that in a disabled condition, and unfit for use. Whereby the plaintiff was hindered and delayed in crossing the river for several days, compelled to herd and feed his cattle at great expense, which nevertheless lost flesh and weight, and from the depreciation, in the mean time, of the beef market, he sustained in all, damages to the amount of $7,000, to recover which, he has brought this action. The ques-

tion arises, whether he is entitled to recover upon the facts stated in his petition, the substance of which is herein above set forth.

We remark, first, that the defendant, in purchasing the ferry franchise from the licensees of the city, did succeed to their rights, duties, obligations and responsibilities, under the contract made by them with the city of Dubuque, the provisions of the city ordinances and the principles of the common law applicable to such cases. Therefore, it was not improper, by way of recital, to refer in the petition to the contract, its transfer to and ownership by the defendant, as showing more fully the nature and extent of his duties and responsibilities, but it does not follow, hence, that the same is the foundation of this suit.

The facts disclosed in the petition show unmistakably that the relation which defendant sustained to the community at the time of the grievances therein complained of, was that of a public ferryman, and the law regards all such as common carriers, and throws upon them like duties and liabilities. Flanders on Shipping, 288; *Whitman* v. *Bowman*, 4 G. Greene, 150; *Babcock* v. *Herbert*, 3 Ala. 392; *Smith* v. *Seward*, 3 Barr, 342; *Pomeroy* v. *Donaldson*, 5 Miss. 36; *May* v. *Hanson*, 5 Cal. 362; *Albright* v. *Penn*, 14 Texas, 290.

It is in his capacity as a common carrier that the defendant in this case is sought to be held liable for the alleged damages which plaintiff had sustained. Conceding this to be so, it is objected however that the petition still fails to show a cause of action in favor of the plaintiff, for that the injury complained of was not the result of any negligent or improper exercise of duty in the act of ferrying him and his cattle over the river, but a mere consequential injury growing out of the fact, that the defendant had

2. —— liability to individuals: city ordinances.

Slimmer v. Merry.

not, at the time, any boat in sufficient repair and running order to meet the wants of the public. And that if he is liable for a default of this kind, he is not so to the plaintiff or any one else who may think proper to sue, but to the city of Dubuque, under its ordinances, if, perchance, he should not be able to show an adequate excuse. It is true he may be fined under the ordinances for a violation of its provisions, but this would not necessarily bar an action by any individual who had suffered damages from a neglect of any of his duties as a ferryman and common carrier. *Wallen* v. *McHenry*, 3 Humph. 245.

The objection overlooks what the law requires of common carriers, which, for strong reasons of public policy, holds them to a very rigorous responsibility. The defendant in this case, undertaking, as he did, to carry persons and property across the river on his ferry boat, is considered as engaged in a public employment, and as holding himself out beforehand to the world, that he will transport or ferry all who will apply and pay the fare. Under such circumstances, he is just as answerable in law for failing to have his ferry boat in a proper condition for running (provided it is so without due excuse) as he would be to operate it in a careless or negligent manner, when injury in either case results to any one.

The law implies a stipulation on the part of the ferryman, as a carrier, to keep his boat or boats in repair and running order.

The rule which holds common carriers in vessels upon the high seas to a strict liability, applies with all its force, and with equal propriety, to carriers upon the inland waters of our country. Flanders on Shipping, 201.

In this case, the petition shows that the defendant occupied the position of ferryman to the public, as such he

held himself out to the world that he would carry for hire person and things across the river.

This, with him, was a special right and privilege, which no one could lawfully interfere with or disturb. If having the means to do so, and he refuses, he is liable to any one applying, provided loss result thereby to the party.

So, if he failed and neglected to keep his boats in suitable running order, and refused, on that account, to transport the plaintiff's cattle over the river, *prima facie* he is equally liable, unless the disabled condition of his boat or boats was the result of accident, or other circumstances which he could not control. But this would be matter of defense.

Now, it is just this *prima facie* case which the petition makes against the defendant, and as such, is placed thereby beyond the reach of a demurrer. If its allegations are uncertain or not as full and technical as the requirements of the law demand, these are faults or objections to be corrected by a motion, and we need not therefore notice the special matters of demurrer, insisted upon in argument, not only for the reason just suggested, but because a few only and the least important of them, were set down as causes of demurrer in the court below, and were not passed upon by that court. It is enough, that we find the substance of a cause of action in the petition, which makes it our duty to reverse the decision and remand the cause.

Reversed.