## HARVEY v. ROSE.

FERRYMEN—Ferrymen, like all other common carriers, are regarded in law as insurers of the property committed to their care, and are responsible for all losses or damages to it, which do not come within the excepted cases of the acts of God and the public enemy.

COMMON CARRIER—*Burden of proof.*—As a common carrier, a ferryman is compelled to receive all goods and property offered for transportation, and in such capacity, he is presumed to have charge of it, and the burthen is upon him to show that he had not such control over it as to invest him with that character in respect to it.

RESPONSIBILITY—Where it affirmatively appears that the owner retains the exclusive control of the property, the ferryman is not chargeable if loss occur, as a common carrier or insurer, but is only answerable for *actual* negligence; and if in such case the loss be occasioned by the willful wrong or negligence of the owner, so that but for it, the loss would not have occurred, the owner cannot recover, except where the direct cause of the loss is the omission of the ferryman, after becoming aware of the owner's negligence, to use a proper degree of care to avoid the consequence of such negligence.

*Appeal from Cross Circuit Court.*

HON. JAMES M. HANKS, Circuit Judge.

*Watkins & Rose,* for appellant.

The instructions given by the court on the motion was manifestly wrong; ferrymen are common carriers. *Spring v. Turner, 1 Murphy, 339; Trent v. Cartersville Bridge Co., 11 Leigh, 591; Rutherford v. McGawen, 1 note, 3 McCord, 17; Gardner v. Green, 8 Ala. 96; Cohen v. Hume, 1 McCord, 144; Pomeroy v. Donaldson, 5 Missouri, 30; Smith v. Seward, 3 Barr. 342.*

"The law regards ferrymen as common carriers, and has imposed on them the same duties and liabilities, and as soon as a ferryman signifies his assent or readiness to receive a passenger, he becomes liable for his safe transit and delivery, and is chargeable with any accident occurring except by act of God or the public enemy." *May v. Hanson, 5 Cal. 360; Richards*

*v. Fuqua, 28 Miss. 792,* and the fact of mutual negligence is no excuse. *Albright v. Perns, 11 Texas, 290; Fisher v. Chisbee, 12 Ill. 344.*

" A common carrier is regarded by law as an insurer of property intrusted to him and is responsible for acts against which he could not provide, from whatever cause arising, the acts of God and the public enemy only excepted." *Angel on Carriers, sec. 67: Story on Bailments, sec. 489.*

HARRISON, J.

This was an action of assumpsit, to recover from the owner of a public ferry, the value of a mule lost in the course of transportation.

The defendant pleaded the general issue, and the verdict was in his favor.

The facts, as set forth in the plaintiff's bill of exceptions are, that the plaintiff applied to cross with his wagon and team, at the defendant's ferry, on the St. Francis river. The wagon was loaded with cotton, and the team, which was driven by a servant, consisted of six mules. Before entering the boat, the person in charge of the ferry directed the two leading, or front span of mules to be detached from the wagon and left on the bank until the next trip of the boat, and he himself unhitched them and fastened them to a stake on the shore, and the wagon was drawn into the boat by the four other mules. As the boat was about leaving the bank, the plaintiff, who was on the boat, spoke to a negro man, the servant of a person crossing at the same time, and requested him to bring the two mules into the after part of the boat, behind the wagon, which he did, and then held them there. The person in charge of the boat made no objection, and gave a direction to separate them from each other, which, however, appears not to have been done. When the boat had proceeded about one third of the distance across the river, one of the mules in the rear of the wagon (proven to have been worth one hundred dollars) fell overboard and was drowned.

At the time of the accident the plaintiff was in the fore part of the boat, assisting in holding the mules, still attached to the wagon. The boat had no railing or balustrades, and was about forty-seven feet in length.

The court, upon request of the plaintiff, instructed the jury that a public ferryman is a common carrier, but refused to give them the following instructions asked by him:

*First.* That, as a common carrier, a public ferryman is bound to exercise extraordinary diligence in the protection and preservation of all property committed to him, and is responsible for all accidents and damage to the same, except such as happen by such unavoidable casualty as the act of God or the public enemy.

*Second.* That a public ferryman is bound to provide a boat of suitable capacity and arrangements to transport, with safety, all property intrusted to him for that purpose, and if he failed in any particular to do so, he is liable for all losses sustained by reason of such failure.

*Third.* That if the plaintiff's mule was lost off the ferry boat whilst crossing at the defendant's ferry, it devolved upon the defendant to prove that it was lost by an accident against which no diligence or foresight on his part could possibly have provided, and without such proof they must find for the plaintiff.

*Fourth.* That if the defendant chose to receive on his boat, from the plaintiff, more property than it could safely carry, he is responsible for all losses or damages occurring to the same, in the course of transportation, though the same may have been received at the solicitation and request of the plaintiff, unless he has proven a special agreement by the plaintiff to assume the risk, and release defendant from liability on account thereof.

And it gave the following against the objections of the plaintiff: A public ferryman is bound for the exercise of ordinary diligence only, such as a prudent man would exercise in the discharge of the duties of a ferryman, and if the mule,

alleged to have been drowned was taken on board the defendant's ferryboat, at the instance of the plaintiff, by his servant, after the defendant had declined to take said mule on that trip, and expressed his wish and intention to leave it and its fellow behind, to be carried the next trip of the boat, then said mule was taken on by the plaintiff, and at his own risk and they must find for the defendant.

Ferrymen, like all other common carriers, are regarded in law as insurers of the property committed to their care, and are responsible for all losses or damage to it, which do not come within the excepted cases of the acts of God and the public enemy.  As a common carrier a public ferryman is compelled to receive all goods and property offered to him for transportation, and when he has received property for that purpose, the presumption is that it is in his charge as a common carrier, and the burden is upon him of showing that he has not had such control over it as invests him with the character of a common carrier in respect to it.  His responsibility is not modified or diminished by the fact that it was accompanied by the owner, unless it affirmatively appear that the owner did not trust the care of the same to him, but retained the exclusive management and control of it himself.  When the care and control of the property has not been entrusted to him, but retained by the owner, he is not, if a loss occurs, chargeable as a common carrier or an insurer, but is only answerable for actual negligence; and if in such case the owner, by his own negligence or willful wrong, contributed to the loss so that, but for it, the loss would not have happened, he will not be entitled to recover, except where the direct cause of the loss is the omission of the ferryman, after becoming aware of the owner's negligence, to use a proper degree of care to avoid the consequences of such negligence: *Shear & Red, on Neg.*, secs. *25, 26; White v. Winnesimmet co., 7 Cush ; Powell et al v. Mills et al. 37 Miss., 691; Willett's Adm'r. v. The Buffalo and Rochester Railroad Co., 14 Barb., 585; Smith v. Smith, 2 Pick. 621.*

In the case of *White v. Winnesimmet Co., 7 Cush., 154,* the

Supreme court of Massachusetts say: "If the traveler used the ferry boat as he would a toll bridge, personally driving his horse upon the boat, selecting his position on the same, and himself remaining on the boat, neither putting his horse into the care and custody of the ferryman, nor signifying to him or his servants any wish or purpose to do so, and the only possession and custody by the ferryman of the horse and vehicle, to which he is attached, is that which necessarily results from the traveler's driving his horse and wagon, or other vehicle, on board the boat, and paying the ordinary toll for a passage; in such case the ferry company would not be chargeable with the full liabilities of common carriers of merchandise. The liability in this case would be one of a different character; and if the proprietors, of the ferry were chargeable for loss or damage, it would be upon a different principle.

"In reference to persons thus using the ferry, the company have responsible duties to perform, the neglect of which may charge them for the loss of goods and property placed on board their boat, when the loss has been occasioned by their default. It is the duty of a ferry company to provide a good and safe boat, suitable for the business in which they are engaged; and they are required to have all suitable requisite accommodations for the entry upon the same, transportation while on board and the departure from the boat, of all horses and vehicles passing over such ferry."

Although there may be some doubt if the ferry company, in the case we have cited, by an acquiesence on their part, in the acts and conduct of the owner, did not acquire such possession and custody of the horse and wagon as made them liable as common carriers, it affords a very good illustration of the doctrine we have stated.

The *prima facie* case—that the defendant accepted the possession and custody of the mule, as a common carrier—established by the fact that he was a public ferryman, and that the mule was put upon his ferry boat for the purpose of being taken across the river, was controverted by other evidence

tending to show that the plaintiff retained possession and control of it, and had not committed it to the care and custody of the defendant.

The first and second instructions, refused by the court, as abstract propositions of law, are undoubtedly correct, but were not, according to the views we have just expressed, a correct declaration of the law in respect to the evidence before the jury, and were therefore properly refused.

The third is also objectionable, because it in effect assumes that the mule was delivered to the defendant as a common carrier, a fact clearly controverted in the evidence, and the truth of which it was the province of the jury to determine. *Floyd et al. v. Ricks, 14 Ark., 295.*

· It is evident, also, from what we have above remarked, that a special agreement is not necessary to qualify a ferryman's acceptance of property delivered to him for transportation over his ferry, so as to modify and change his liability in respect to it, and the fact that the care and custody of the property was never surrendered to him by the owner, can˙ be shown by circumstances as well as by direct evidence. The court, therefore, did not err in declining to give the jury the last instruction asked by the plaintiff.

The instruction given by the court, against the objection of the plaintiff, was manifestly erroneous, and the court should for that reason have given the plaintiff a new trial; and for the error in refusing a new trial, the judgment must be reversed and the cause remanded.