A ferryman is not a common carrier of property retained by a passenger in his own custody and under his own control, and liable as such for all losses and injuries except those caused by the act of God or the public enemies. The cases which go the length of holding that the ferryman is chargeable as a common carrier for the absolute safety of property thus carried, and that the owner, in taking care of the property during the passage of the boat, may be regarded as agent of the ferryman, do not stand upon any just principle, and are not within the reasons of public policy upon which the extreme liability of common carriers rests. Among the cases to this effect are Fisher v. Clisbee
(12 Ill., 344); Powell v. Mills (37 Mass., 691); and Wilson
v. Hamilton (4 Ohio St., 722). These suggestions are made necessary by the fact that the Supreme Court at General Term based their judgment upon the doctrine of the cases referred to, and to which we are not prepared to assent. The trial at the circuit, and the recovery there, was upon an entirely different principle, and one more in accordance with our view of the law. While ferrymen, by reason of the nature of the franchise they exercise, and the character of the services they render to the public, are held to extreme diligence and care, and to a stringent liability for any neglect or omission of duty, they do not assume all the responsibility of common carriers. Property carried upon a ferry-boat in the *Page 35 
custody and control of the owner, a passenger, is not at the sole risk either of the ferryman or the owner. Both have duties to perform in respect to it. If lost or damaged by the act or neglect of the ferryman he must respond to the owner. The ordinary rules governing in actions for negligence apply; and a plaintiff cannot recover if he is guilty of negligence on his part, contributing to the loss. The liability of a common carried, in all its extent, only attaches when there is an actual bailment, and the party sought to be charged has the exclusive custody and control of property for carriage. A ferryman does not undertake absolutely for the safety of goods carried with and under the control of the owner; but he does undertake for their safety as against the defects and insufficiencies of his boat, and other appliances for the performance of the services, and for the neglect or want of skill of himself and his servants. At the same time the owner of the property, retaining the custody of it, is bound to use ordinary care and diligence to prevent loss or injury. The duties and obligations of the defendant, a ferry company, were defined by the judge to the jury in the very words of Judge DEWEY in White v. Winnisimmet Co. (7 Cush., 155). When the only possession and custody by the ferryman of a horse and carriage is, as in this case, that which necessarily results from the traveler's driving his horse and wagon on board the boat and paying the usual ferriage, the ferryman is not chargeable with the full liabilities of a common carrier. The duties and liabilities of the ferryman to persons thus using the ferry is thus stated by Judge DEWEY. It is the duty of a ferry company "to have all suitable and requisite accommodations for the entering upon, the safe transportation while on board, and the departure from the boat of all horses and vehicles passing over such ferry." * * * "They are also required to be provided with all proper and suitable guards and barriers on the boat for the security of the property thus carried, and to prevent damage from such casualties as it would naturally be exposed to, though there was ordinary care on the part of the traveler." *Page 36 
The same principle was adjudged in Clark v. Union Ferry Co. (35 N.Y., 485); and the defendant was held liable for the loss of a horse occasioned by the insufficiency of the chain used as a guard or barrier at the rear of the boat. (See, also,Willoughby v. Horridge, 12 C.B., 742; Walker v. Jackson,
10 M. W., 161.)
At the close of the plaintiff's evidence in the case at bar there was evidence tending very strongly to show that the chain which was provided to be put up as a guard or barrier at the river or outer end of the boat to prevent casualties, to which travelers passing with horses and carriages would be naturally exposed, was either not up or was entirely insufficient for the purpose; and if either was established, and the loss of the plaintiff's horse and carriage resulted from such cause, the defendant was clearly liable. When a loss has been occasioned by the apparent negligence of the ferryman in providing safe and sufficient means to perform what he has undertaken to the public, the burden is upon him to show that the accident was not occasioned by his fault. There was evidence of negligence to provide or use a proper chain or barrier to prevent accidents of this kind to carry the case to the jury.
If there was any evidence of neglect or want of proper care on the part of the plaintiff, it was not so conclusive as to authorize the court to take the case from the jury and direct a nonsuit. The motion for a nonsuit was properly refused, and the question as to the alleged negligence on the part of the defendant, as well as to contributory negligence on the part of the plaintiff, submitted to the jury. There was no exception to that part of the charge now complained of, in which the judge, after stating the obligations of the defendant in the words given above, says: "You will perceive, therefore, that it was the duty of the defendant to have put up proper and necessary barriers to save the owner of any property from the casualties to which it might, from its nature, be possibly subjected." If this particular expression was not strictly accurate the defendant should have excepted *Page 37 
to it, and, not having done so, cannot now be heard to object. But it did not mislead; and if the language is stronger than it ought to have been, the judge only intended to apply the rule which he had just before laid down; and all that was intended was to hold the defendant to that degree of care and those provisions for security which would be sufficient to guard against casualties liable to happen, and which might naturally occur. It was a suggestion for the guide of the jury in this particular case, and was not intended as an instruction to the effect that the defendant was bound to guard effectually against every possible casualty and accident; and, if so intended, it was not applicable to the case in hand, and worked no injury; for the accident was one the most likely to occur unless guarded by proper barriers. But it is enough that it was not excepted to. It is next objected that the judge refused to charge the jury that the plaintiff's property was at his own risk; and, secondly, that it was not at the risk of the defendant while on the boat. The judge had already, in a lucid charge, explained with accuracy the nature and extent of the defendant's obligations, and the measure of its liability, and the effect of any negligence or want of care and skill on the part of the plaintiff in the management and control of his horse, and as defeating his right of action if they contributed to the loss; and he properly refused to charge as requested. The property was not at the sole risk either of the plaintiff or defendant; but either might be charged with its loss for neglect or omission of duty in respect to it. Neither was the insurer of the property as regards the other; but both had obligations to perform in respect to it. The property was in the custody of the plaintiff, and not in that of the defendant; but that was not the suggestion of the requests. What was intended by the requests is not very clear. There was nothing practical in them as touching the real questions at issue, and an answer either way would not have affected the result. The action was not against the defendant as a bailee of the property, but for injury and loss occasioned by the wrongful act and neglect *Page 38 
of the defendant while the property was in the custody and care of the owner upon the boat of the defendant. The defendant's risk had respect to the sufficiency of its boats and the care and skill of its servants, and did not depend upon any other question. There was no error in the refusal to charge as requested.
But one other objection is taken upon this appeal, and that is based upon the exception to the exclusion of evidence that Mrs. Wyckoff, the wife of the plaintiff, had said to the witness, after her rescue from the water, that if her husband had got out of the wagon and taken the horse by the head the accident would not have happened. Mrs. Wyckoff while under examination as a witness had said she did not remember whether she had or had not said this to the person named, and who was afterward called to prove that she had so said. If such declaration would have been inconsistent with a contradicting of any material statement made by her as a witness, that is, of any statement material to the issue, it should have been admitted in evidence after her attention had been called to it as tending to impeach her as a witness, and discredit her testimony. The fact was undisputed that the plaintiff did not get out of the wagon and take his horse by the head, and whether his failure to do so was negligent, or a want of proper care and precaution contributing to the casualty was submitted to the jury. Mrs. Wyckoff was not asked, and did not give her opinion as to the conduct of her husband the plaintiff, or whether the accident would or would not have happened had he got out of the wagon and held the horse as suggested, so that the declaration would not have been inconsistent with her statements as a witness in that respect. Mrs. Wyckoff had testified at an early stage of the trial that she did not hear any one request the plaintiff to get out and hold his horse, and was asked in the same connection whether she did not afterward say to her husband that if he had got out and taken the horse by the head, as he was requested to do, the accident would not have happened. There was no attempt in any stage of the trial *Page 39 
to prove that she had made this statement to her husband or any one else. Afterward the defendant called one or more witnesses, who testified that after the blowing of the first whistle which frightened the horse this request was made to the plaintiff, and whether it was so made was one of the questions submitted to the jury. It was just at the close of the trial that Mrs. Wyckoff was recalled and the question put in a different form, and as to a statement to a third person, with time, place and circumstance, but omitting all reference to the request to the plaintiff which was claimed to have been made, and which Mrs. Wyckoff had said she had not heard. The declaration in the form suggested by the question last put was entirely consistent with every part of her testimony. She might have thought and expressed the opinion that the plaintiff ought to have got out and held the horse by the head, and might in that way have prevented the accident, and yet not have heard any request from any source that he should do so. That she should have made the statement as claimed would not have lent the least force to the claim or authorized the inference that she had heard the request made as alleged. The remark might well have been made without suggestion to its author from any external source. The evidence was properly excluded. It did not tend to contradict or impeach the witness, and the only purpose it could have served was to get the opinion of the wife as expressed immediately upon her rescue before the jury to the prejudice of the plaintiff.
This was not admissible. The judgment should be affirmed.
All concur.
Judgment affirmed. *Page 40