Evans & Shinn vs. Rudy.

## EVANS & SHINN vs. RUDY.

1. PRACTICE IN SUPREME COURT: *Instructions.*

The supreme court will not reverse for the refusal of the circuit court to give a proper instruction, if others, substantially the same, and equally favorable to the party, are given.

2. FERRYMEN: *Liability of.*

When a ferryman receives property for transportation, and has the exclusive custody of it, he is held to the strict liability of a common carrier. But if the owner retains control of the property himself, and does not surrender the charge of it to the ferryman, such strict liability does not attach, and he is only responsible for actual negligence; and if the owner, by his own negligence, has contributed to the loss, which otherwise would not have happened, the ferryman is only liable when the direct cause of the loss is his omission, after becoming aware of the owner's negligence, to use a proper degree of care to avoid the consequences of such negligence.

3. SAME: *Measure of damages against.*

The measure of damages for property lost by the fault of a ferryman in its transportation, is the value of the property, together with compensation for the actual expenses, and loss of time, caused by the detention on account of the accident.

4. PRACTICE IN CIRCUIT COURT: *Admitting testimony irregularly.*

It is within the discretion of the circuit court to allow a plaintiff to introduce further evidence in chief, in support of his action, after the defendant has closed his testimony. And, unless the discretion is abused, it is not error.

5. MOTION FOR CONTINUANCE: *Must be in bill of exceptions.*

A motion for continuance, not contained in the bill of exceptions, is no part of the record in the supreme court.

APPEAL from *Sebastian* Circuit Court.

Hon. JAMES BRIZZOLARI, Special Judge.

*Duval & Cravens*, for appellants.

*Sandells*, contra.

HARRISON, J. This was an action by the appellee against the appellants, who were proprietors of a ferry on the Arkansas river, at Fort Smith, for damage suffered from the negligence of the defendants in the transportation of the plaintiff's property.

The defendants denied that there was any negligence on their part, and averred, that the damage was occasioned by the negligence of the plaintiff's agent in charge of the property.

The plaintiff had a verdict for fifty dollars, and the defendants moved for a new trial, which was refused.

The plaintiff's wagon, drawn by two mules, and driven by, and, as the evidence tended to show, in charge of the plaintiff's wife, was, about night, taken on board the defendants' steam ferryboat, at Fort Smith, for transportation to the other side of the river.

There were in the wagon, besides the plaintiff's wife, his seven children—and divers goods belonging to him.

A young man on horseback, and two other wagons be-

longing to other persons, were in company, and went on board at the same time, and the young man rendered some assistance in getting the plaintiff's team and wagon on the boat.

The plaintiff's wagon was driven on last, and was stopped in the gangway between the two gates of the boat, somewhat in the rear of the others, in front of the furnace, and the end of it, four to six feet from the gate at which they entered, and one of the hind wheels was chocked, by an employé on the boat, with a stick of whortleberry wood, used for that purpose. The gate was then closed and fastened by raising the apron, which was done by a chain and an iron weight,—one of the defendants' witnesses said of 100, and another of 140 pounds,—at one end, and by tying with a grass rope, three-fourths of an inch in diameter, to the main stanchion, 'at the other.

According to witnesses for the defendants, the mules were wild and unruly, and did not go on the boat readily, and the captain of the boat, after they were got on, told one of the men along with the wagon, and who seemed to have charge of the plaintiff's property, to unhitch the mules and take the plaintiff's wife and children out of the wagon—that the fire, when the doors of the furnace were opened, would frighten the mules—apprising him of the danger of leaving so wild a team hitched to the wagon while crossing the river; but the man would not unhitch them, saying that he could hold them, and there was no danger—and that the plaintiff's wife said she would stay in the wagon, and she and the children did so.

Witnesses for the plaintiff testified directly contrary. The mules, they said, were gentle and easily managed; that they were driven on the boat without difficulty or

trouble; and that no such direction was given by the captain or any one.

After the boat started, and had got some distance from the shore, the mules became frightened—witnesses for the plaintiff said, by sparks from the chimney or smoke-stack, falling upon and burning them; witnesses for the defendants said by the glare of the fire upon the opening of the furnace doors; and, in their fright, backed the wagon with such force against the gate as to break the chain and rope, and the wagon and mules, and the persons in the wagon, were precipitated into the river, and some of the goods were lost.

The chimney or smoke-stack had no spark-catcher.

Evidence was produced as to the value of the goods lost and the plaintiff's expenses in recovering and taking care of the other property.

Witnesses for the defendants testified that the ferryboat was in good order; was well suited and adapted to the business; had an efficient captain and crew, and was carefully and prudently managed; that no spark-catcher was necessary, and one could not be used, with wood for fuel; and that the fastenings of the gates were as strong and secure as were usually found on ferryboats.

The defendants asked the court to instruct the jury; that, "If you believe from the evidence that the ferryboat was in good order, suitable for the purpose for which she was used; was manned by a prudent and careful captain and crew; that the gates were securely fastened; that the captain warned the person in charge of the wagon of the danger of the mules becoming frightened while crossing the river, and directed him to unhitch them, and requested the plaintiff's wife to get out of the wagon and take her children out; but the person in charge of the wagon

refused to unhitch the mules, and asserting his ability to manage them, retained control of them; and the plaintiff's wife remained in the wagon with her children; that there was no negligence on the part of the captain or crew; and that the accident would not have occurred if the captain's order to unhitch the mules had been obeyed; the defendants were not liable, and you should find for the defendants."

The court refused to give the instruction, and the defendants excepted.

We do not perceive any objection to this instruction, but the error in refusing to give it was corrected by the following—substantially the same, if not more favorable to the defendants, which the court gave with others on its own motion:

"7. If it appeared from the evidence that the plaintiff, by any willful act done, or omitted to be done, directly contributed to the injury complained of, you should find for the defendants."

Of the others given by the court on its own motion, the defendants excepted to the following:

"2. Ferrymen are common carriers, and as such are insurers of all things committed to and received by them for transportation, against all harm or damage, except such as may be occasioned by the act of God, the public enemy, or the willful negligence or default of the party injured.

"6. Whether proper appliances and means were used, or the ferryboat skillfully manned and managed, is a question of fact for the jury; and if you find from the evidence, that such necessary and proper appliances and means were used, and the boat skillfully and properly manned and managed; and that the defendants exercised

Evans & Shinn vs. Rudy.

extraordinary care in the use of such appliances and means, and in the skillful management of the boat, you will find for the defendant; but if you find that such appliances and means were not used—that the boat was not properly manned, or skillfully managed, or the defendants did not exercise extraordinary care in using such appliances and means, or in the skillful management of the boat—you will find for the plaintiff.

" 8. If, for want of a spark-catcher, sparks from the chimney or smoke-stack fell upon and burnt the mules, by which they became frightened, and, by backing, precipitated the wagon into the river, such fact is to be considered by you, as evidence tending to show negligence on the part of the defendants.

" 9. If the ferryboat was in good condition and repair, and suitable for the business in which she was employed, and was manned with a sufficient number of hands, and all proper appliances and means were in use at the time, and due care and caution were used in the transportation of the plaintiff's property, and the falling of the mules and wagon into the river was occasioned by the neglect of the person in charge, to obey the order of the captain to unhitch the mules, and without fault on the part of the defendants, their agents or servants—these facts may be taken in consideration in passing upon the question of negligence on the part of the plaintiff.

" 10. If the plaintiff's wife, or other person in charge of the wagon and team, retained on the boat exclusive control thereof, and the defendant assumed no control of the same, and the precipitation of the wagon and team into the river occurred without negligence on the part of the person in charge of the boat, the defendants are not chargeable for the loss or damage, as a common carrier or

as an insurer; and are only answerable for actual negligence. And if the loss was occasioned by the willful wrong or negligence of the plaintiff, and would not have occurred but for it, the plaintiff is not entitled to recover, unless the direct cause of the loss was the omission of the defendants, after becoming aware of the plaintiff's negligence, to use proper care to avoid the consequences of such negligence.

"12. If you find for the plaintiff, you will assess his damages at such sum as is equal to the value of the property lost, together with compensation for the actual expenses and loss of time caused by the detention on account of the accident."

That ferrymen, when they receive property for transportation and have the exclusive custody of it, are held to the strict liability of common carriers, is too well settled to be questioned. But it is also well settled, that if the owner retains control of the property himself and does not surrender the charge of it to the ferryman, such strict liability does not attach, and he is only responsible for actual negligence; and if the owner, by his own negligence, has contributed to the loss, which otherwise would not have happened, he is only liable, when the direct cause of the loss is his omission, after becoming aware of the owner's negligence, to use a proper degree of care to avoid the consequences of such negligence. *Harvey v. Rose, 26 Ark., 3, and the authorities there cited; Wyckoff v. Queen's County Ferry Co., 52 N. Y., 32; Whar on Neg., 326, 335, 706-8; Davies v. Mann, 10 M. & W., 445.*

Whether the property in this case was intrusted to the exclusive custody of the defendants; whether the plaintiff, by the negligence of his agent, so contributed to

the loss, that but for it the loss would not have occurred; and whether the direct cause was the omission of the defendants, after having become aware of such negligence, to take proper means to prevent the consequences of it— were questions raised by the evidence; and the instructions in respect to the matter of negligence properly presented them for the consideration of the jury, and were unobjectionable. The last, related to the measure of damages, and was also without objection. The plaintiff was entitled to recover, if at all, for whatever damage was the natural and proximate consequence of the accident. *2 Green. on Ev., 268, a; Sedg. on Dam., 66.*

An exception was raised by the defendants to the plaintiffs being permitted, after the defendants had closed their evidence, to introduce further evidence in support of the action, though not rebutting that for the defense.

To suffer the plaintiffs to do so, was within the discretion of the court, and can not, when there is no abuse of discretion—and none is shown here—be assigned as an error. *Gantt's Digest, section 4668.*

Another ground of the motion for a new trial was the refusal of the court to postpone the trial, upon the application of the defendants, for the want of the testimony of absent witnesses. The bill of exceptions shows that an exception was taken to the ruling of the court upon the defendant's motion for the continuance, but the motion is not contained in the bill of exceptions, and is not part of the record before us.

Finding no error, the judgment is affirmed.