## THE NASSAU.

### (District Court, E. D. New York. September 14, 1910.)

1. FERRIES (§ 3*)—CHARACTER OF FERRIES AS PUBLIC HIGHWAY—RIGHTS AND RESPONSIBILITIES.

   While the owner and operator of a ferryboat is in a sense a common carrier, it is not responsible in the way in which a railroad or steamboat line is responsible for goods committed to its care to be delivered at the end of the transportation, but its rights and responsibilities are nearer those of a toll road or bridge; the charge being for the right to use a public highway, including the power necessary for transportation.

   [Ed. Note.—For other cases, see Ferries, Cent. Dig. § 3; Dec. Dig. § 3.*

   Ferries as carriers, see note to Wade v. Lutcher & Moore Cypress Lumber Co., 20 C. C. A. 536.]

2. FERRIES (§ 27*)—POWER TO REGULATE ON NAVIGABLE WATERS—FEDERAL STATUTES.

   A ferryboat plying entirely within the boundaries of a state, but in navigable water, which is accessible for general purposes of navigation to craft from other states and foreign countries, is subject to such statutes and regulations controlling navigation under the jurisdiction of the United States as are applicable to vessels engaged in such business, whether owned and operated by a private individual or corporation or by a municipality.

   [Ed. Note.—For other cases, see Ferries, Cent. Dig. § 74; Dec. Dig. § 27.*]

3. FERRIES (§ 29*)—STEAM FERRYBOATS—APPLICABILITY OF FEDERAL STATUTES—CARRIAGE OF DANGEROUS ARTICLES.

   The provision of Rev. St. § 4472 (U. S. Comp. St. 1901, p. 3050), that no "crude or refined petroleum, or like explosive burning fluids, or like dangerous articles, shall be carried as freight or used as stores on any steamer

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

carrying passengers," does not apply to a steam ferryboat plying between Manhattan and Brooklyn in such sense as to render it unlawful for such boat to transport a wagon or truck loaded with barrels of kerosene.

[Ed. Note.—For other cases, see Ferries, Cent. Dig. § 76; Dec. Dig. § 29.*]

In Admiralty. Proceeding by the United States against the ferryboat Nassau; the City of New York, claimant. Libel dismissed.

William J. Youngs, U. S. Atty. (William Austin Moore, Asst. U. S. Atty., of counsel), for libelant.

Archibald R. Watson, Corp. Counsel of City of New York (George P. Nicholson and Hubert A. McNally, of counsel), for claimant.

CHATFIELD, District Judge. Ferries have been maintained across the rivers and waters surrounding the island of Manhattan for the conveyance of people, animals, and vehicles since the population of the neighborhood has been sufficient to justify the maintenance of such convenience or necessity. The right to operate such a ferry has always been considered a privilege of the sort now known as a franchise, and many of the ferries were originally created by grants of the crown when New York was a colony. Within a few years the city of New York has taken over and is operating some of these ferry routes or lines between highways recognized as public or city streets, and the ferryboats by which these ferries are conducted are owned and operated by the city of New York. A toll is charged for each passenger, for each horse and wagon or team, and an additional charge for a wagon or truck carrying a load of goods. These ferryboats are operated by steam, and traverse throughout their entire trip, from slip to slip, navigable tide water wholly within the state of New York.

The present action has arisen from an attempt on the part of the United States to apply section 4472, Rev. St. (U. S. Comp. St. 1901, p. 3050), to the operation of these municipal ferries. In the particular instance which is made the basis of the suit, one of the boats carried a truck loaded with ten barrels of petroleum oil, and charged for the passage or for the ticket which gave the right to have the truck transferred the sum of 40 cents, and of this amount 10 cents was included over the fare of the truck because of the presence of the load.

The provisions of the statute are as follows:

"No loose hay, loose cotton, or loose hemp, camphene, nitroglycerine, naphtha, benzine, benzole, coal oil, crude or refined petroleum, or other like explosive burning fluids, or like dangerous articles, shall be carried as freight or used as stores on any steamer carrying passengers. * * * Refined petroleum, which will not ignite at a temperature less than one hundred and ten degrees of Fahrenheit thermometer, may be carried on board such steamers upon routes where there is no other practicable mode of transporting it, and under such regulations as shall be prescribed by the board of supervising inspectors with the approval of the Secretary of the Treasury. * * *"

It is not disputed that the petroleum came within the proscribed materials named in the statute. It is also not disputed that the ferryboat is a steam vessel of such a character as would be liable to comply with the statute, if it be a boat carrying freight and subject to the jurisdiction of the United States law.

Two general questions must be considered. · The first question is whether a vessel plying entirely within the boundaries of a state, in navigable water, which is capable of access for commercial purposes or for general purposes of navigation to the craft from neighboring states or from foreign countries or the Atlantic Ocean, is subject to the statutes and regulations controlling navigation in waters under the jurisdiction of the United States. The second question is whether a municipal ferryboat was intended to be affected by this statute; that is, whether it is within the terms of the statute as the statute was enacted by Congress for the purposes and reasons indicated by its provisions.

The city has suggested a number of questions which are so important in scope that they should be referred to, but which need not be gone into at length, as a statement of them is sufficient.

In the first place, New York Bay, as has been said, is navigable water. The tide ebbs and flows therein. It is beyond question a water over which the United States has jurisdiction so far as operations may be conducted thereon within the interstate commerce clause of the Constitution, and it is also within the admiralty jurisdiction of the United States and subject to the statutes of the United States where that admiralty or commerce jurisdiction has been made applicable by act of Congress. The maintenance of a municipal ferry in the sense of a highway or means of progress from one part of the city to another is within the powers and prerogatives and duties of the city of New York. In re Wheeler, 62 Misc. Rep. 37, 115 N. Y. Supp. 605. The right to maintain and operate such a franchise as that of a ferry dependent upon the laws of the state is a public right, and, within the statutes relating thereto, which need not be discussed in detail, could be granted by the city to private individuals or conducted by the city itself. The character of the operation and the nature of the services performed would not change, whether an individual, a private corporation, or the city of New York be the active party to the actual maintenance and operation of the boats. If the franchise be given to some individual or corporation, compensation therefor would and should belong to the public. The charge to the individuals who used the ferry would be in the nature of toll, but the individual maintaining the ferry would be a common carrier in the sense that he could not refuse to carry any person properly applying within the law for passage. He would be bound to use care and avoid negligence, in so far as the obligation rested upon him to perform such duties toward the passengers, and to be responsible to the extent that the statutes and public policy might determine for the persons and property within the scope of the service rendered. On the other hand, such a ferry corporation would not be responsible in the way in which a railroad or steamboat line is responsible for goods committed to its care. It would not be a common carrier in the sense of receiving into its own control and charge goods for transportation, to be given out of its control at the end of the route. The control of the ferryboat is limited and applies only to matters connected with the navigation of the boat and the furnishing of a place or highway for the purpose of transportation. Wyckoff v. Queens Co. Ferry Co., 52 N. Y. 32, 11 Am. Rep. 650; White v. Winnisimmet Co., 7 Cush.

(Mass.) 156; Harvey v. Rose, 26 Ark. 3, 7 Am. Rep. 595. In this way the rights and responsibilities of a ferry are much nearer those of a toll road or bridge, where the charge is for a right to use—that is, to enjoy—a public highway, including propulsion; that is, the force necessary for actual transportation. Mayor v. Starin, 106 N. Y. 1, 12 N. E. 631. Perhaps an exact parallel would be the use of a moving sidewalk or roadbed over a bridge upon which a toll is charged. Charles River Bridge Co. v. Warren Bridge Co., 11 Pet. 420, 9 L. Ed. 773. The added toll for a loaded truck is exacted because of the additional privilege furnished, and yet from the standpoint of the service rendered is in many ways similar to the charge by weight or size for the transportation of freight by a common carrier.

A number of cases might be cited pointing out these various distinctions, but, as has been said, it is not necessary to attempt to differentiate further between the business of a carrier transporting freight and the functions of a person operating a franchise for the maintenance of such a highway as a ferry.

The first question, as to the jurisdiction of the United States over such operations, must be answered in the light of what the operation is, and it would seem to follow that if a private individual were operating a ferry wholly within the limits of a state, but within the limits affected by the laws of Congress both as to interstate commerce and admiralty matters, such a ferryboat would be subject to whatever laws might be applicable. It would not be disputed that ferryboats, whether municipal or individual, are subject to the general laws of navigation and to observance of statutes as to rights, courses, and signals, and that such a ferryboat would be bound by and would have to consider the general uses and rights to control navigation vested in Congress, so far as they affected those particular waters. The safety of other people and of boats with which the ferryboats came in contact would require a uniform application of all laws governing the locality in question.

The only question, therefore, as to the application of the statutes to such a craft as a ferryboat, is whether the broad purpose of the statute was to include ferryboats, and whether the statute is so worded to show that purpose. If a ferryboat operated by a private corporation or by an individual for the purpose of furnishing a connecting link between city streets, and of allowing similar facilities to those maintained by the municipality at the expense of the taxpayers (except in so far as reimbursed by the collection of fares and in general not producing a profit, as would be expected in the case of private enterprise), is subject to such rules as those regulating the carrying of petroleum, then a ferryboat operated by the city of New York must take the same precautions, must be subject to the same rules, and must operate in exactly the same way as the boat of a private party. So that the real question is whether the section referred to is applicable to ferryboats, or, rather, whether ferryboats such as those in question must conform to the terms of the statute.

The city contends that the language of the statute refers solely to vessels having two or more decks, capable of carrying large quantities

of merchandise, and intended to carry freight. But a general statute as broad in its language as the one we are considering cannot, when obviously intended for the protection of lives and property, be arbitrarily made to apply to large vessels or large quantities of property alone, and not to small ones. In the eyes of the law the individual is as worthy of protection as a number of individuals, and a single deck freight boat, carrying many passengers, is surely within the scope of the law as much as a large steamer with many decks or holds for the carrying of freight and but small capacity for passengers.

The city further contends that the states have retained all of the police power not delegated to the national government, citing Gilman v. Philadelphia, 70 U. S. 713, 18 L. Ed. 96, and that they may authorize the construction of highways, turnpikes, and canals between points in the same state, may regulate the tolls for the use of the same (Railroad Co. v. Maryland, 88 U. S. 456, 22 L. Ed. 678), may authorize the building of bridges over nonnavigable streams, which do not by themselves or by their connection with other waters form a contiguous highway for interstate and foreign commerce. The Montello, 78 U. S. 411, 20 L. Ed. 191, and 87 U. S. 430, 22 L. Ed. 391, which cases are cited with approval in Covington & Cincinnati Bridge Co. v. Kentucky, 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962. Chief Justice Marshall says in Gibbons v. Ogden, 9 Wheat. 203, 6 L. Ed. 23, that the state has the right to regulate the internal commerce of the state, including turnpike roads, ferries, etc., and that that right has not been surrendered to the general government.

But the city's application of these principles is based upon the idea that the navigation of a ferryboat or the maintenance of a ferry is subject to the control of the federal government only in the respects in which it is engaged in interstate commerce. As has been said before, over bodies of water connected with the ocean and open to the commerce of the various states and foreign nations uniform navigation and admiralty laws must prevail and be within the jurisdiction of the federal government, not only because these waters are capable of interstate commerce, but because they are within the admiralty jurisdiction of the United States as given to it by the Constitution.

The city cites section 4426 of the Revised Statutes (U. S. Comp. St. 1901, p. 3029), providing for the inspection of the hull and boilers of every ferryboat, canal boat, yacht, or other small craft, as indicating that, when Congress intended to refer to ferryboats, it specifically mentioned the same. With this contention there would be no dispute, but the citation of this statute and its use as an argument conclusively answers the other contention of the city that ferryboats as such are not subject to the laws of the United States government, unless engaged in interstate or foreign commerce. The very power of the United States to inspect the hull and boilers of ferryboats in the harbor of New York carries with it an answer to the proposition that ferryboats are not subject to all the regulations applicable to such craft as the ferryboat may be.

We must therefore consider the sole remaining question, dependent upon the language of the statute itself, as set forth in section 4472,

Rev. St.; that is, whether the barrels of petroleum in question were either freight or to be used as stores upon the ferryboat when carrying passengers. Section 4464 of this same chapter and title (U. S. Comp. St. 1901, p. 3045) provides that the inspector shall state in every certificate of inspection granted to steamers carrying passengers, other than ferryboats, the number of passengers of each class, and various provisions follow as to the permits for carrying passengers; these provisions thus being expressly not applicable to ferryboats. But the general sections of the title and chapters relating to steam vessels are made to apply by section 4399 (page 3015) to every vessel propelled in whole or in part by steam, and by section 4400 (page 3015) to all vessels navigating any waters of the United States which are common highways of commerce or open to general or competitive navigation, excepting public vessels of the United States, vessels of other countries, and boats propelled in whole or in part by steam for navigating canals. If the petroleum, therefore, constituting the load upon the truck at the time of the alleged offense, is to be considered as freight, the city of New York, or whoever may be operating the ferryboat in question, must comply with the provisions of section 4472. If the petroleum in question be not freight, but be merely an undisclosed or unknown, even if an easily ascertainable, part of the load of a certain wagon for which toll or a charge for the right to use a means of transportation is exacted, then the section in question does not apply, and the action should be dismissed. The case is one in which any intent on the part of Congress to exempt ferryboats could easily have been expressed, and the use of ferryboats and toll rates or turnpikes was, if anything, more common in the days when these statutes were first enacted than at the present time. The history of most communities in which toll rates or turnpikes have gradually been abolished, toll bridges changed into free bridges, and private ferries changed into public ferries (even without the exaction of any toll whatever, but where the maintenance of the ferry is paid from taxes) illustrates what would be the effect if the city of New York should make the use of the municipal ferries entirely free. We can therefore see that the mere use of the word "freight" in its application to the present situation cannot be determined by finding whether or not a toll is collected for the service rendered. It may be assumed that whether or not the boat be a ferryboat or a freight steamer, if the charge of toll was made to vary according to the amount of goods carried, or if the circumstances showed the services rendered to be that of carrying freight, the statute would apply. On the other hand, if the services rendered be that merely of a strict toll or the collection of a charge based upon the nature of the use of the highway rather than the amount of service rendered by the carrier, then the goods carried would not be freight, and the statute in question would not apply.

It would seem upon the whole that Congress did not intend to compel ferryboats to adopt the precautions with relation to the nature of the goods which might be transported, which it did intend to be observed by boats carrying such things as freight. It did intend that ferryboats like the one in question should be inspected and should ob-

serve all of the statutes applicable to such a boat, but upon the precise question here presented the present libel for penalty must be dismissed.