RAYMOND P. MERCER *v*. CHRISTIANA FERRY COMPANY.

(*November* 11, 1930.)

RODNEY, J., sitting.

*Frank L. Speakman* and *John Biggs, Jr.*, for plaintiff.

*William G. Mahaffy* and *Otto Wolff, Jr.* (of Lewis, Adler and Laws, of Philadelphia, Pa.), for defendant.

Superior Court for New Castle County, No. 224, March Term, 1930.

RODNEY, J., delivering the opinion of the court:

In this case, it may be assumed from the facts stated that the defendant, the ferry company, is a common carrier. The law is so settled in this particular that I shall not pause for the citation of authorities.

Being a common carrier, the question for determination is whether the defendant's liability is an absolute one as insurer subject only to be denied upon a showing that the loss was occasioned by act of God or of the public enemy or whether the liability of the defendant arises only upon a showing of negligence on its part

causing or contributing to the accident. The answer to the question must be sought and found in the basic principles which prompted the common law in establishing the liability of common carriers.

It would be interesting to trace the development of the common law liability of a common carrier as insurer, but time and space do not permit this indulgence. It seems certain that the strict liability did not exist in the very early days of the common law, but the ordinary liability of a bailee then prevailed, but when England had become a great commercial nation then the law quickly adapted itself to the changing circumstances. The first liability growing out of a maritime venture seems to have been fixed about 1670 in *Mors v. Slew, Sr. Thos. Raymond* 220. The reasons for the strict liability of a common carrier were set forth by Chief Justice Holt in *Coggs v. Bernard, 2 Ld. Raymond* 909, as founded on the possibility that

"carriers might have an opportunity of undoing all persons that had any dealings with them by combining with thieves &c. and yet doing it in such a clandestine manner as would not be possible to be discovered. And this is the reason the law is founded upon in that point."

The reasons for the rule suggested by Chief Justice Holt no longer exist in their primitive force and seem to have no application in cases of injury or damage to goods as contrasted with actual loss. On the other hand, the tremendous increase in trade and the immense value of goods entrusted to common carriers make more necessary now the preservation of the rule itself. The comments and reasons for the rule suggested by Chief Justice Best in *Riley v. Horne, 5 Bing.* 217, are those now generally adopted as more consonant with modern conditions.

"If [goods] should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. His witnesses must be the carrier's servants; and they knowing that they could not be contradicted would excuse their masters and themselves. To give due security to property the law has added to that responsibility of a carrier, which immediately arises out of his contract to carry for a reward, namely, that of taking all reasonable care of it, the responsibility of an insurer."

In any case the whole responsibility, and liability of a carrier as an insurer of goods is built upon the foundation of a delivery of the goods to the carrier and an express or implied accept-

ance of them upon his part. The whole theory of liability is based upon the custody or right of custody of the goods by the carrier. This then is the basic principle of the present case. This court said in *Truax v. P. W. & B. R. Co.*, 3 *Houst.* 233, at page 246:

"Ordinarily, to render a carrier responsible, there must be an actual delivery to him or his servants, or to some other person authorized to act in his behalf."

And again:

"In order to charge the company and fasten on it the liability of a common carrier, the goods must be delivered into the exclusive custody of the company, and be accepted by the latter in that capacity, for the purpose of transportation. So long as the owner or his agent retains the custody and control of them, there has been no such delivery and acceptance as will charge the carrier. But acceptance may be either actual or constructive. The general rule, however, is as I have stated, that the delivery must be into the hands of the carrier himself or to his servants, or to one authorized to receive the goods. * * * "

In this case then there must have been a delivery and an acceptance, actual or constructive, of the automobile in order to charge the defendant with the strict liability as insurer irrespective of negligence.

That there was no actual delivery of the car by the plaintiff and an actual acceptance of the custody of it by the defendant is so clear as to leave no room for discussion. To constitute actual delivery and actual acceptance there must be a real and present transfer of the physical possession and control. This is negatived by all the facts of the case. The testimony simply shows that the plaintiff drove his car upon the ferry and applied his brakes and brought his car to a stop. This testimony shows that the plaintiff, from an experience based on using the ferry upwards of seventy-five times, was prepared to drive the car from the ferry when and if the boat had reached its destination. Do these facts show a constructive delivery by the plaintiff and acceptance by the defendant?

In a constructive delivery while the actual possession may remain in the first holder he thereafter holds not for himself but as the agent for the person upon whom delivery is sought to be fixed. The question applied to this case is not whether the plaintiff retained actual possession of the car, but whether he parted with

his dominion over the property so as to thereafter hold under the authority of the ferry company—the common carrier.

A question that must naturally arise in determining whether there was a constructive delivery and acceptance of the automobile in the present case is at what period did such constructive delivery take place. Was it when the ticket was sold? The record simply shows the payment of one dollar for a ticket reading "Christiana Ferry Company. Good for one passage of one automobile and driver between Pennsgrove and Wilmington." There is nothing in this more indicative of a delivery and acceptance of the car than there is of that of the driver. Could the constructive delivery arise from the fact of placing the car upon a particular spot upon the boat even though the precise location was indicated in a formal manner by the defendant's servants? I am of the opinion that a simple direction of that kind, unaccompanied by other acts showing exercise of custody or control, are to be considered as constituting mere traffic regulations and not as an assumption of possessory authority. A conclusion that the owner of the car became at some indefinite point an agent for the carrier could not be adopted until it was tested by a consideration of some of the responsibilities growing out of that relation. These might include the liability of the carrier for the tort of the driver in the operation of the car and the responsibility for the loss or larceny of an integral part of the car itself.

A number of older cases involving the loss of horses or other livestock on ferryboats fix upon the common carrier the liability of insurer. These include *Fisher v. Clisbee* (1851), 12 *Ill.* 344; *Wilson v. Hamilton* (1855), 4 *Ohio St.* 723; *Miles v. James,* 1 *McCord* (*S. C.*) 157; *Cohen v. Hume* (*S. C.* 1821), 1 *McCord* 444; *Pomeroy v. Donaldson* (1837), 5 *Mo.* 36; *May v. Hanson* (1855), 5 *Cal.* 360, 63 *Am. Dec.* 135; *Slimmer v. Merry* (1867), 23 *Iowa* 90; *Wilson v. Alexander* (1905), 115 *Tenn.* 125, 88 *S. W.* 935.

Some of the cases like that of *Fisher v. Clisbee,* expressly hold that a ferryman is in complete custody and control over all property on the boat and that "his dominion over them is as complete

as over his own property." and that the owner acts as agent for the ferryman. In many cases, however, care must be exercised in properly considering them as many are in reality based on negligence as contrasted with the liability as insurer.

Opposed to the foregoing authorities there are a number of cases which, while holding a ferryman as a common carrier, place his liability upon the proper ground as depending on the custody of the thing transported. They hold, and properly hold, that where a driver retains possession, custody and control of the thing to be transported then the carrier is not liable as an insurer but only for its negligence in causing loss. *White v. Winnisimmet Co., 7 Cush. (Mass.)* 156; *Harvey v. Rose,* 26 *Ark.* 3, 7 *Am. Rep.* 595; *Evans v. Rudy,* 34 *Ark.* 383; *Wyckoff v. Queens County Ferry Co.,* 52 *N. Y.* 32, 11 *Am. Rep.* 650; *Dudley v. Camden & Phila. Ferry Co.,* 42 *N. J. Law* 25, 36 *Am. Rep.* 501; *Yerkes v. Sabin,* 97 *Ind.* 141, 49 *Am. Rep.* 434; *Frierson v. Frazier,* 142 *Ala.* 232, 37 *So.* 825; *The Garden City (D. C.),* 26 *F.* 766; *The Nassau (D. C.),* 182 *F.* 696.

I do not propose to extend this opinion by quotation from authorities. A single excerpt from the case of *Wyckoff v. Queens County Ferry Co., supra,* will be sufficient:

"A ferryman is not a common carrier of property retained by a passenger in his own custody and under his own control, and liable as such for all losses and injuries except those caused by the act of God or the public enemies. The cases which go the length of holding that the ferryman is chargeable as a common carrier for the absolute safety of property thus carried, and that the owner, in taking care of the property during the passage of the boat may be regarded as agent of the ferryman, do not stand upon any just principle, and are not within the reasons of public policy upon which the extreme liability of common carriers rests. * * * * "

This is a correct statement of the law applicable to the facts of this case.

The liability of a common carrier as an insurer, irrespective of negligence, was a judicial rule of a more or less arbitrary nature made necessary by the changing conditions of a developing people. It was one of these glorious examples that history affords of the common law adapting itself to the requirements of the emergence of England as a trading nation. It was based upon the possession,

custody and control by the carrier of the thing transported. When these are lacking the rule itself cannot apply.

Being of the opinion that the facts of this case show no delivery and acceptance, actual or constructive, of the automobile into the custody and control of the defendant company and there being no showing of negligence on the part of the defendant, judgment must be entered in favor of the defendant.

In view of the foregoing conclusion reached by me, it is unnecessary to consider the question of the proof of damages.

Much of the interest in the disposition of this case arises from the fact that notwithstanding the thousands of automobiles transported over ferries, I cannot find that the precise question here involved has before arisen. Two cases involved the loss of motor vehicles on ferries, *Shepard v. Reed (C. C. A.)*, 26 *F.* (2d) 19, and *St. Paul Fire & Marine Ins. Co. v. Harrison,* 140 *Ark.* 158, 215 *S. W.* 698, but in the one the question discussed was the negligence of the defendant and in the other it was denied that the ferryman was a common carrier.