## FLORENCE COTTON OIL COMPANY *v.* ANGLIN.

### Opinion delivered December 23, 1912.

AGRICULTURE—REGULATION OF FERTILIZERS.—In an action on a promissory note given for the purchase of a commercial fertilizer for an agreed price, it is a good defense that the sale of the fertilizer was made in this State, and that the fertilizer had never been analyzed by the Commissioner of Mines, Manufactures and Agriculture nor tags affixed to the bags as required by law.

Appeal from Union Circuit Court; *George W. Hays,* Judge; affirmed.

*Marsh & Flennikin* and *Gaughan & Sifford,* for appellant.

Under the circumstances of the case, it was error to hold that as a matter of law the sale was illegal. Appellant had in good faith done all it could do under the circumstances, had perpetrated no fraud, and the purchaser in effect waived the question of the tags. The thing required by the act was impossible of performance by reason of the failure of the State's representative to have on hand a supply of tags. 85 Ark. 422; 84 Ala. 93.

*E. O. Mahoney,* for appellee.

The sale was unlawful because of the failure of the seller to comply with the fertlizer inspection and tagging law, the note sued on was invalid and not enforceable, and the court properly directed a verdict for the defendant. Kirby's Digest, § § 824, 825, 832, 833; Acts 1907, p. 999; *et seq.,* § § 6, 10, 16; 47 Ark. 378; 32 Ark. 619-631; 43 Ark. 66;

HART, J.  Appellant brought this suit against appellee to recover upon a promissory note for $166.69.  The note was dated August 9, 1910, and was payable to the order of appellant on or before November 1, 1910.  Appellee answered and averred that the note was given for the purchase of commercial fertilizer; that appellant was a foreign corporation, and at the time the fertilizer was sold to appellee and the note executed appellant had not complied with the laws of the State in regard to foreign corporations doing business here. Appellee also says that the note sued on was given for the purchase price of certain fertilizer sold to him by appellant in Union County, Arkansas, and avers that at the time of the sale the fertilizer had not been inspected and tagged in compliance with the laws of the State.  Wherefore he claims that the note sued on was void and unenforceable.  The facts are as follows:

Appellant is a corporation organized under the laws of the State of Alabama.  In the spring of 1910 it shipped a carload of fertilizer to its agent at Upland, in Union County, Arkansas, and its agent there sold and delivered the fertilizer to various parties, among whom was appellee.  Appellant offered to prove that before the sale of the fertilizer it sent one hundred dollars to the Arkansas State Commissioner of Mines and Agriculture for tags and was advised by him that he had no tags on hand; that the commissioner advised him to proceed with the sale, and that later on he would furnish it with tags covering the fertilizer already sold; that after receiving the tags appellant sent them to its agent with instructions to furnish the tags to each of the purchasers of fertilizer, which had already been sold.  The court refused to allow this testimony to go to the jury, and its action in so doing is now assigned as error.

Appellee testified that the fertilizer purchased by him from appellant for which the note sued on was given was not tagged in compliance with the statute pertaining thereto at the time he purchased the same.  He said that the fertilizer was injurious to his crops, and was of no use as a fertilizer. Other witnesses testified that they bought fertilizer out of the same lot sold to appellee; that they used it as directed, and that it was of no benefit to their crops.

J. M. Smith testified that he was one of the State inspectors of fertilizer, and that Union County was in his district; that he did not sample any fertilizer in Union County, Arkansas, during the year 1910, and was not notified by appellant or any one else to come there and take samples of fertilizer that was being offered for sale.

Appellant in rebuttal introduced testimony to show that the fertilizer was good, and would have been beneficial to the crops of appellee, had it been used as directed.

The court held as a matter of law that the sale of the fertilizer by appellant to appellee was unlawfully made because the laws of the State of Arkansas in regard thereto had not been complied with, and gave a peremptory instruction in favor of appellee. The case is here on appeal.

It is first insisted by counsel for appellant that the case at bar is controlled by the principles of law announced in *Woolfort* v. *Dixie Cotton Oil Co.*, 77 Ark. 203, and cases of like character, where it was held that a foreign corporation may recover upon a contract made by it in this State, although it failed to file a copy of its articles of incorporation and the required statement in compliance with the statute of the State. We do not think the principle there announced is controlling here. There the contract was only remotely and incidentally connected with the failure of the foreign corporation to comply with the statute of the State in regard to permitting it to do business in this State. The contract sued on was independent of the illegal conduct of the corporation in not complying with the laws of the State providing the terms upon which it might do business here, and was not designed to aid or promote such transactions. So it may be said that in the character of cases of that kind the illegality occurred in a matter collateral to the contract, and the contract is not thereby rendered illegal, unless it is expressly made so by the statute itself. In the case at bar the sale of fertilizer, unless the statute is complied with in regard thereto, is prohibited on grounds of public policy. The Legislature of 1907 passed an act to provide for and regulate the registration, sale, inspection and analysis of commercial fertilizer in the State of Arkansas. See Acts of 1907, page 995. Section 5 of the act provides for inspection fee and inspection.

Section 6 provides that it shall not be lawful to sell or offer for sale in this State any fertilizer or fertilizer materials that have not been registered with the Commissioner of Mines, Manufactures and Agriculture, as required by the act. It also provides that the fact that the purchaser waives the inspection and analysis shall be no protection to the party selling the same except under certain restrictions which it is not necessary to notice under the facts of this case. Section 10 prescribes the duties of the inspectors. Section 12 provides for an analysis of the fertilizer. Section 16 makes it a misdemeanor for any person to sell or offer for sale any fertilizer or fertilizer material without having first complied with the provisions of the act and prescribes the punishment at a fine of not less than one hundred, nor more than five hundred dollars.

The undisputed evidence shows that the fertilizer sold to appellee by appellant, for which the note sued on was given, was not inspected and analyzed, and was not tagged in compliance with the provisions of the statute. The statute makes the failure to do this a misdemeanor, punishable at a fine of not less than one hundred nor more than five hundred dollars. The general rule is that where a statute provides that a violation thereof shall be a misdemeanor it would seem clear that it was the intention of the Legislature to render illegal contracts violating such statute. 15 A. & E. Ency. of Law, (2 ed.) page 939.

In the case of *Compagionette* v. *McArmick*, 91 Ark. 69, we held in effect that where a statute provides that a violation thereof shall be a misdemeanor it is manifest that the Legislature intended to make contracts violating the statute illegal, and the courts will not enforce them. This is in accord with the adjudicated cases on this question. See case note to 1 A. & E. Ann. Cas. 333.

Counsel for appellant also rely upon the case of *Steiner* v. *Ray*, 84 Ala. 93, to reverse the judgment. There the court held that one who sells a fertilizer omitting at the request of the purchaser to tag each package sold, as required by the statute, but delivers tags for each package to the purchaser, he promising to attach them, does not violate the statute, and a note given for the purchase price of such fertilizer is

valid. The facts in that case show that the agent of the seller had had the fertilizers inspected, and it had procured the tags required by the statute, and was proceeding to attach the tags to the several packages when at the request of the buyers he delivered the tags to them and permitted them to depart upon their promise to attach them. The court said that this was a substantial compliance with the statute. Here the facts are essentially different. The undisputed evidence shows that the fertilizer was never inspected and analyzed, as required by the statute, and that the agent of the seller did not have the tags as required by the statute at the time he sold the fertilizer to appellee. The sale was made at Upland, in this State. As we have already seen, the statute denounces a heavy penalty against any person who sells or offers for sale in this State commercial fertilizer without first complying with certain provisions. Therefore, this case is distinguishable from *Steiner* v. *Ray, supra,* and is controlled by the principles of law in the case of *Campbell* v. *Segars,* 81 Ala. 259, where the court held that, in an action on a promissory note given for the purchase of a commercial fertilizer for the agreed price, a plea averring that the sale was made in this State, and that at the time of the sale the commercial fertilizer had never been analyzed by the Agricultural Commissioner, nor tags affixed to the packages and bags as required by the State, is a full and complete defense.

The judgment will be affirmed.