ADAMS *v.* VIRGINIA-CAROLINA CHEMICAL COMPANY.

Opinion delivered January 8, 1917.

1. FERTILIZERS—INSPECTION—SALE.—A recovery of the purchase price of commercial fertilizer can not be had unless the laws of this State regulating such sales have been complied with.

2. FERTILIZERS—NECESSARY INSPECTION.—Act 183, Acts of 1913, requires shippers of fertilizers to notify the Commissioner of Agriculture of all shipments of fertilizers, but the act does not require an inspection of every shipment before delivery to the consignee.

Appeal from Calhoun Circuit Court; *C. W. Smith,* Judge; affirmed.

*J. S. McKnight* and *C. L. Poole,* for appellant.

1. We deny all liability on the notes because (1) the fertilizer was worthless and of no commercial value. (2) The fertilizer sacks were not tagged nor inspected by the commissioner of agriculture or any of his inspectors as required by law. Acts of 1913, No. 183. The court erred in refusing defendant's instruction No. 1 and in giving plaintiff's instructions Nos. 2 and 3. Act 183, *supra,* is in all respects like Act 398, Acts of 1907, p. 995, which was construed in 105 Ark. 672, where it was held that it was a good defense that the fertilizer had never been analyzed or tagged as required by law. Acts of 1913, p. 758; 105 Ark. 672; 123 *Id.* 279.

2. The court erred in permitting the certificate of the commissioner of agriculture to be introduced in evidence, as it does not show the guaranteed chemical composition of the fertilizer nor that it was ever analyzed as the law directs. *Ib.*

*John Baxter* and *R. W. Baxter,* for appellee.

1. The fertilizer came up to the guaranteed commercial value. The court gave as part of its instructions

sec. 3 of Act 183, Acts of 1913. This submitted the
whole question to the jury and that is in substance
what appellee's instructions 2 and 3 did. The jury
found against appellant on this question.

2. The appellee complied with the fertilizer laws
of Arkansas. The evidence shows proper analysis and
inspection. Act 183, *supra*.

3. This is a case of interstate commerce and the
laws of Arkansas do not apply. 168 S. W. 290; 113
U. S. 727; 120 *Id.* 489; 217 *Id.* 91; 57 Ark. 24; 114
S. W. 791.

SMITH, J. Appellee was the plaintiff below, and
brought suit against appellant upon three promissory
notes aggregating $530.00. The execution and non-
payment of the notes was admitted, but liability thereon
was denied upon two grounds. The first of these grounds
was that the notes were given in payment of a consign-
ment of fertilizer which was worthless and of no com-
mercial value, and the second ground was that the sacks
of fertilizer were not tagged or inspected by the com-
missioner of agriculture or by any of his inspectors, as
the laws of this State direct.

The first question was submitted to the jury under
instructions which directed the jury to "deduct three
times the amount of the deficiency in commercial value
from the note" if the fertilizer fell more than three per
cent. below the guaranteed commercial value. Inas-
much as the jury found for the plaintiff for the full
amount of the notes sued on, it may be assumed that
there was no finding that the fertilizer fell more than
three per cent. below the guaranteed commercial value.
Indeed, the jury could hardly have found otherwise
than it did on this question, in view of admissions on the
part of appellant in letters written by him to appellee,
appellant's satisfaction with the fertilizer being therein
fully expressed.

The important question in the case is whether or
not the right of action was defeated by the failure to
have the fertilizer inspected or tagged. The court

refused to submit this question to the jury. The testimony on the part of appellant is to the effect that the car containing the fertilizer was shipped direct from Memphis to Harrell, Arkansas, and the seals of the car were not broken upon its arrival there, and that no one inspected the fertilizer there or elsewhere in this State.

On the part of appellee, the proof was to the effect that the car was shipped from Memphis on March 7, 1914, and that each and every sack of the fertilizer had attached thereto the appropriate inspection tag of the State of Arkansas for the season including March 1, 1914, and that all laws and customs in regard to such shipment were complied with, and it is admitted that these tags were on the sacks when were they unloaded from the car.

There was also offered in evidence the certificate of the Commissioner of Mines, Manufactures and Agriculture that pursuant to the provisions of Act No. 183 of the Acts of 1913, the appellee company had filed an affidavit and certificate of the names of the brands of commercial fertilizers, and the guaranteed chemical composition of the same, to be offered for sale in this State during the year ending September 30, 1914, and this certificate included all the names and brands of fertilizer embraced in the shipment to appellant, and the certificate recited that these brands had been duly registered in the office of the Commissioner of Mines, Manufactures and Agriculture, and "that they had complied with the provisions of the law with reference to the registration of the aforesaid brands." This certificate also contained a warning that it "did not authorize the shipment of fertilizer in this State unless the same is properly tagged as per the statutes of Arkansas."

(1) The case of *Florence Cotton Oil Co.* v. *Anglin*, 105 Ark. 672, is authority for the statement that a recovery of the purchase price of commercial fertilizer cannot be had unless the laws of this State regulating such sales have been complied with. But we think under the evidence set out above the court below

properly held that no failure to comply with the law was shown. Counsel for appellant insists that under the law there must be an inspection of each consignment of fertilizer, and that suit cannot be maintained to recover the purchase price of any shipment unless there was an inspection of that shipment. We do not agree with counsel, however, that this condition is imposed, and this construction of the fertilizer statute is decisive of this case.

The act does require, however, that the names and addresses of all "manufacturers or manipulators" of fertilizers shall be filed with the Commissioner of Mines, Manufactures and Agriculture, together with the guaranteed analysis of the fertilizer, and that the name and address of the manufacturer, and the guaranteed analysis of the fertilizer, and the weight of the package, shall be branded on or attached to each package. Section 5 of this Fertilizer Act of 1913 provides the minimum percentage of plant food which any fertilizer may contain. Section 7 provides for the manner of procuring tags to be placed upon the packages of fertilizer and the fees to be paid therefor, and section 9 provides that it shall be unlawful to sell or to offer for sale in this State any fertilizers that have not been registered with the Commissioner of Mines, Manufactures and Agriculture as required by the act. Section 11 provides that the Commissioner of Mines, Manufactures and Agriculture shall appoint one inspector for the State at large and one inspector for each railroad commission district in the State, and provides for their compensation. Section 12 provides how the inspections shall be made and the report to be made thereof. Sections 13 and 14 authorize the employment of a chemist and fixes his compensation and prescribes his duties. Section 15 authorizes the Commissioner of Mines, Manufactures and Agriculture to establish rules and regulations in regard to the inspection, analysis and sale of fertilizers in any manner not inconsistent with the provisions of the act. Section 17 requires each shipper to mail to the Commissioner notice of such shipment on

forms furnished by the Commissioner for the purpose. Section 18 of the act makes a failure to comply with its terms a misdemeanor and prescribes the punishment therefor.

(2) The purpose of the act in requiring shippers to notify the Commissioner of shipments of fertilizer is to afford the opportunity, if it is thought proper, to have an inspection made of any particular shipment, so that it may be determined whether various shipments do in fact correspond with the guaranteed analysis, but the act does not require an inspection of every shipment before delivery to the consignee. The inspection fee of 25c. per ton fixed by section 7 of the act could not be expected to raise sufficient revenue to compensate the large number of inspectors whose services would be required to perform that duty.

There being no proof of any failure to comply with the provisions of this act by appellee, the court below properly refused to submit that question.

Finding no prejudicial error, the judgment is affirmed.