# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

EMPIRE CARBON WORKS *v.* BARKER & Co.

Opinion delivered December 22, 1917.

1. BILLS AND NOTES—SALE OF FERTILIZER—NON-COMPLIANCE WITH STATE LAWS.—The maker of a note, given for the purchase of fertilizers, may defend the same upon the ground that the sale was made in this State, and that the fertilizer had not been analyzed by the Commissioner of Mines, Manufactures and Agriculture, nor tags affixed as required by law.

2. FERTILIZERS—SALE OF—OFFERING FOR SALE.—The Act of 1913, p. 758, amending Act No. 398, Acts of 1907, provides for the registration, sale, inspection and analysis of commercial fertilizers in the State of Arkansas, and requires that the analysis and inspection be made before the fertilizer is sold or offered for sale. *Held,* proof tending to show any overt or individual offer of fertilizers for sale within this State constitutes an "offering for sale" within the State of Arkansas, within the meaning of the statute.

3. FERTILIZERS—SALE—"OFFER FOR SALE."—An actual proffer of the sale of fertilizers by an agent of the seller to some particular person within the State of Arkansas, constitutes an "offer for sale within the State," within the meaning of Act 398, Acts of 1907, as amended by Act of 1913, p. 758.

4. STATUTES—CONSTRUCTION—PENAL STATUTE.—While penal statutes are to be strictly construed, it is the duty of the court, in construing the statute, to find the legislative intent, and in discovering the intent, the object of the statute should be considered.

5. FERTILIZERS—"OFFER FOR SALE"—NON-RESIDENT SELLER.—An agent of appellant, a Missouri corporation, came into Arkansas and solicited the appellee to buy fertilizers from his company;

the parties entered into a written contract in the State of Arkansas, subject to the approval of appellant's home office in Missouri. *Held,* this was an actual proffer of sale within this State to a particular person in the State, and constituted an "offer for sale within the State," of fertilizers, within the meaning of the statute, which requires that such fertilizers shall be analyzed, and the bags tagged in a certain manner.

Appeal from Fulton Circuit Court; *J. B. Baker,* Judge; affirmed.

*Ellis & Jones* and *Samuel Frauenthal,* for appellant.

1. The court erred in directing a verdict for defendant; it should have directed a verdict for plaintiff.

Under the testimony it was a Missouri sale and not illegal, even though compliance had not been made with the laws of this State. The delivery of the goods to the carrier is the place of sale. 44 Ark. 556; 50 *Id.* 20; 78 *Id.* 123; 79 *Id.* 456; 91 *Id.* 422; 94 *Id.* 318; 92 *Id.* 387; 51 *Id.* 133; 53 *Id.* 196; 22 L. R. A. 425. The carrier is the agent of the buyer and delivery to it completes the sale. 94 Ark. 402; 2 Elliott on Cont., § 1115, 1153; 106 Ark. 477.

If the contract is valid where made, it is valid everywhere, notwithstanding the requirements of the laws of Arkansas. 2 Elliott on Cont., § 1126; 44 Ark. 230; 82 Ga. 438; 77 *Id.* 146; 28 Am. St. 811; 61 L. R. A. 419; 129 **Ark. 384.**

The notes were payable in Missouri and that is where the contract was finally accepted and completed. 61 Ark. 1; 9 Cyc. 670; 70 *Id.* 493.

2. It was error to refuse a continuance. It was an abuse of the court's discretion. 21 Ark. 460; 85 *Id.* 334; 99 *Id.* 394; 100 *Id.* 301. An amendment was made to the answer on the eve of the trial. 67 Ark. 142; 71 *Id.* 197; 48 L. R. A. (N. S.) 224; 9 Cyc. 124-5.

*Kay & Northcutt,* for appellees.

1. The continuance was properly refused. It is not in the bill of exceptions. 7 Ark. 257; 34 *Id.* 390; 40 *Id.* 116. No abuse of discretion is shown.

2. The place of payment was the place of execution of the note and it was an Arkansas contract. The sale was made in Arkansas. 95 Ark. 421; 105 *Id.* 585, 513; 91 *Id.* 163. Hence governed by Arkansas laws. 105 Ark. 672.

3. The court properly directed a verdict. 120 Ark. 208; 91 *Id.* 340; 84 *Id.* 566; 57 *Id.* 468. See also, 97 Ark. 442; 71 *Id.* 447.

The sale was illegal for failure to comply with the laws of Arkansas by a foreign corporation.

### STATEMENT OF FACTS.

This was a suit instituted by the Empire Carbon Works against J. C. Barker & Company to recover upon a promissory note. The defendants interposed as a defense to the action that the sale of the fertilizer was made contrary to the statutes of Arkansas and that on this account the contract was illegal and void. The facts are as follows:

The Empire Carbon Works is a corporation domiciled in the City of St. Louis, in the State of Missouri, and is engaged in the sale of fertilizers. J. C. Barker & Company, the defendants, are engaged in business at Viola, Arkansas. The agent of the plaintiff company came to Mammoth Spring, Arkansas, and there made a contract with a representative of the defendants for the sale of fertilizer to the defendants. The price of the fertilizer was agreed upon and a written contract was entered into by the parties subject to the approval of the company at St. Louis. A note for the purchase price was executed and dated Viola, Arkansas, but was made payable in St. Louis, Missouri. The company accepted the contract at its home office in St. Louis, and shipped the fertilizer to the defendants at their place of business in the State of Arkansas. This suit was brought to recover on the note as above stated. The defendants interposed as a defense that the contract had been entered into in violation of our statutes regulating the sale of fertilizers and on that account was illegal and void.

The court directed a verdict for the defendants and from the judgment rendered the plaintiff has appealed.

HART, J., (after stating the facts). In *Patapsco Guano Co.* v. *North Carolina Board of Agriculture,* 171 U. S. 345, the court held: "The act of the Legislature of North Carolina of January 21, 1891, must be regarded as an act providing for the inspection of fertilizers and fertilizing materials in order to prevent the practice of imposition on the people of the State, and the charge of twenty-five cents per ton is intended merely to defray the cost of such inspection; and as it is competent for the State to pass laws of this character, the requirement of inspection and payment of its cost does not bring the act into collision with the commercial power vested in Congress, and clearly this can not be so as to foreign commerce, for clause two of section 10 of article 1 expressly recognizes the validity of State inspection laws, and allows the collection of the amounts necessary for their execution; and the same principle must apply to interstate commerce."

(1)   In *Florence Cotton Oil Co.* v. *Anglin,* 105 Ark. 672, the court held: "In an action on a promissory note given for the purchase of a commercial fertilizer for an agreed price, it is a good defense that the sale of the fertilizer was made in this State, and that the fertilizer had never been analyzed by the Commissioner of Mines, Manufactures and Agriculture, nor tags affixed to the bags as required by law." This holding was in application of the general rule that a contract to do an act which is prohibited by statute is void and can not be enforced in a court of justice.

Counsel for the plaintiff concede that the inspection laws of the State of Arkansas were not complied with and recognize the principles of law above announced, but they contend that our inspection statute can have no extra-territorial effect, and that there was no completed sale in this State. That under the facts as they appear in the record the transaction was a Missouri con-

tract, and that being a valid contract under the laws of the State of Missouri, it is valid here and that the principles above announced have no application in the present case. Assuming that the sale was completed in the State of Missouri, still we think the transaction falls within the ban of our statute. The agent of the plaintiff company came into the State of Arkansas and solicited the defendants to purchase fertilizers from his company and a written contract for their sale was entered into and signed by them subject to the approval of the officers of the company at St. Louis, Missouri.

(2-4)   The Legislature of 1913, passed an act to amend Act No. 398 of the Acts of 1907 providing for the registration, sale, inspection and analysis of commercial fertilizers in the State of Arkansas. Acts of 1913, p. 758. Section 1 of the act provides that all manufacturers, jobbers and manipulators of commercial fertilizers and fertilizer materials to be used in the manufacture of same who may desire to sell or offer for sale in the State of Arkansas such fertilizers and fertilizer materials shall file with the Commissioner of Agriculture upon forms furnished by him, the names of the brand of such fertilizers or fertilizer material, with guaranteed analysis.

Section 2 provides that all persons, companies, manufacturers, dealers or agents before selling or offering for sale in this State any fertilizers or fertilizer materials shall brand or attach to same tags in the manner provided by the statute.

Section 18 provides that any person selling or offering for sale any cotton seed material, fertilizer or fertilizer materials without first having complied with the provisions of this act, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than $100 nor more than $500.

It is insisted that the transaction shown in the record does not constitute an "offer for sale in the State of Arkansas" within the meaning of the statute. It is

claimed that these words are designed to prevent a person or corporation from placing fertilizers in his store or warehouse in this State and throwing open the doors to the public and thus exposing the fertilizers for sale. The majority of the court however, think this is too narrow or restricted a meaning to be given to the words "offer for sale in the State of Arkansas." If this had been the purpose of the Legislature, doubtless it would have used the words "keep for sale" instead of "offer for sale." The majority of the court are of the opinion that the words "offer for sale" should be given a broader meaning. Of course we think that if a person or corporation should keep fertilizers in his store and expose them for sale in the State of Arkansas, this act would constitute an offer for sale. In other words we think that the fertilizer materials could be offered for sale without any overt act of solicitation. We feel equally sure that proof tending to show any overt or individual offer of the fertilizers for sale within the State of Arkansas constituted an "offering for sale" within the State of Arkansas within the meaning of the act. In other words we think an actual proffer of the sale of the fertilizer by an agent of the seller to some particular person within the State of Arkansas constituted an "offer for sale within the State," within the meaning of the statute. In reaching this conclusion we are not unmindful of the legal maxim that penal statutes must be strictly construed. Another cardinal rule of construction is to find the legislative intent and in discovering this the object of the statute should be considered.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Waldrop,* 93 Ark. 42, the court said: "This statute is a penal law, and the legal maxim is that such a law should be construed strictly. But this does not mean that the words of the statute should be so narrowed as to exclude cases which those words, in their common and ordinary acceptation, would comprehend."

In *State* v. *Sewell,* 45 Ark. 387, the court recognized that while penal statutes are to be construed strictly we are also committed to the principle that the intention of the Legislature must govern in the construction of penal as well as other statutes and that penal statutes are not to be construed so strictly as to defeat the intention of the Legislature. In that case the court quoted with approval from Bishop on Statutory Crimes, the following: "The rule of strict interpretation does not prevent our calling in the aid of other rules, and giving each its appropriate scope, yet so as not to overturn this one. For example, penal statutes are not to be so construed as to work an absurdity, or defeat their purpose or the process of the court instituted for their enforcement."

The intention of the Legislature in passing statutes of this kind is clearly expressed by the Supreme Court of Alabama in the case of *Steiner* v. *Ray,* 4 Sou. 172, as follows: "As we understand the statute, its controlling purpose was to guard the agricultural public against spurious and worthless compounds sometimes sold as fertilizers; to fix on sellers a statutory guaranty that fertilizers sold by them contain the chemical ingredients, and in the proportions, represented; and to furnish to buyers cheap and reliable means of proving the deception and fraud, should such be attempted. The accomplishment of these objects will greatly promote the prosperity and success of the agricultural industry, and we do not hesitate to declare that they are strictly within the pale of legitimate police regulation."

It is obvious that if the construction sought to be placed upon the statute by the plaintiff should govern, the object of the statute would in a large measure be defeated. If the agents of persons or companies domiciled without the State could come into the State and solicit orders from persons here and by making the contract subject to the approval of the home office in another State and then ship the fertilizers into the State without complying with the State laws in regard thereto, it is evi-

dent that the purpose of the statute would to a great extent be defeated.

On the other hand the construction the majority have placed upon the statute will effectuate the purpose the Legislature had in passing it and we think we have given a reasonable meaning to the words ''offer for sale.''

(5) Counsel for the plaintiff in support of their contention cite the case of *Atlantic Phosphate Co.* v. *Ely,* 82 Ga. 438, 9 S. E. 170. In that case Ely wrote a letter from his home in the State of Georgia to the Phosphate Company in the State of South Carolina for prices of fertilizers. They sent him their printed circular of prices. Whereupon he again wrote them to ship to him in the State of Georgia a certain quantity of fertilizer at the price named in their circular. The company placed the fertilizer upon the cars in the State of South Carolina consigned to him in the State of Georgia. Ely was a farmer and purchased the fertilizer for his own use. He defended a suit by the company for the purchase price on the ground that the fertilizer had not been inspected according to the laws of the State of Georgia. The court held that the contract of sale was a South Carolina contract and denied relief to Ely. The majority of the court think the ruling in that case was correct under the facts stated and that that case is rather an authority against the position assumed by counsel for the plaintiff. In that case the court denied relief to Ely on the ground that there was neither a sale nor offer for sale in the State of Georgia. The only thing that could have been construed in that case as an offer for sale within the State of Georgia was the printed circular of prices sent by the company in response to Ely's request for prices on fertilizers. Here the facts are materially different. An agent of the company came into the State of Arkansas and solicited the defendants to buy fertilizer from his company. A written contract between the parties was entered into in the State of Arkansas subject to the approval of the home office in the State of Missouri. This

was an actual proffer of sale within the State to a particular person in the State and the majority are of the opinion that it constituted an "offer for sale within the State" of fertilizers, within the meaning of the statute.

It is also insisted that the judgment should be reversed because the court refused to grant the continuance asked by the plaintiff. The motion for a continuance is not contained in the bill of exceptions and is not part of the record before us. *Evans & Shinn* v. *Rudy,* 34 Ark. 383; *Ward* v. *Worthington,* 33 Ark. 830, and *Phillips* v. *Reardon,* 7 Ark. 256.

It follows that the judgment will be affirmed.

McCULLOCH, C. J. and SMITH, J., dissent.

HART, J., (on rehearing). Counsel for appellants, in their brief on the motion for a rehearing, insist that the construction placed by the court upon the fertilizer act in our original opinion can not affect the validity of the note sued on. They insist that the note sued on is not based upon the agreement or negotiation between the representatives of the parties at Mammoth Spring, Arkansas. We do not agree with counsel in this contention.

The representatives of the parties met at Mammoth Spring, Arkansas, and entered into a contract for the sale of the fertilizer. The contract was reduced to writing there and signed by the representatives, subject to the approval of the appellant. It was afterwards accepted by the sales manager of appellant at its home office in the City of St. Louis, Mo. By the terms of the contract the customer was to execute a promissory note to appellant covering all shipments made under the contract. The note sued on was afterwards executed by appellees, at its place of business at Viola, Arkansas, pursuant to the terms of the contract. It was given for the fertilizer shipped under the contract. It is true it was not executed until June 5, 1914, and the contract was dated November 12, 1913; but as above stated the acceptance of the contract by the company at St. Louis was made pursuant to the contract between the representa-

tives of the parties reduced to writing at Mammoth Spring. The execution of the note was provided for in the contract. The whole constituted one transaction and was the direct and immediate result of the proffer of sale by the representative of the appellant in the State of Arkansas. The statute prohibits the offering for sale of fertilizers within the State and the representative of appellant could have been punished under the statute. As we have already pointed out, this overt act of offering the fertilizer for sale in this State resulted in the execution of the note sued on and so the contract was the direct result of doing an act prohibited by statute.

Counsel, also, again earnestly insist that the decision is contrary to the principles of law laid down in *Atlantic Phosphate Co.* v. *Ely*, 82 Ga. 438, and *Trousdale* v. *Arkadelphia Milling Co.*, 106 Ark. 477. As we pointed out in our original opinion, the court in the former case held that the sending by the company from without the State by mail to a person in the State, of one of its printed circulars containing the prices of its fertilizers in response to a letter for prices, did not constitute an offer for sale of its fertilizer in the State. The letter was mailed from without the State and the court held that it was not an offer of sale within the State. Here the agent of appellant came into the State and while here committed the overt act of offering the fertilizer for sale. We did not comment on the Arkadelphia Milling Co. case in our original opinion, but it in no sense conflicts with our present opinion but is rather in accord with it. Trousdale was a broker at Monroe, La., and purchased from the milling company two cars of chops, which the company billed from its mills at Arkadelphia, Ark., to Trousdale at Monroe, La., shippers orders. When the cars arrived, they were delivered to Trousdale's customers pursuant to his direction. The milling company did not comply with the police regulation of the State of Louisiana requiring food stuffs for use in that State to be tagged. Trousdale alleged in his complaint that he suffered a loss

of $221.25 because the milling company did not comply with the act, and sued it for that amount. The court held that Trousdale as a broker at Monroe, La., was required to comply with the law. The court said that the allegations of the complaint showed an independent contract by which Trousdale represented the dealers at Monroe rather than the manufacturers at Arkadelphia. Trousdale sent in an order for the chops from Monroe, La., to the milling company at Arkadelphia, Ark., and the sale was completed at Arkadelphia when the milling company delivered the chops on board the cars there.

The decision was based on the theory that the milling company made no offer of sale of the chops in the State of Louisiana and for that reason was under no obligation to comply with the statutes of Louisiana. We think it clearly deducible from that opinion that if the court had thought that Trousdale was the agent of the milling company that there would have been an offer of sale of the chops within the State of Louisiana notwithstanding the sale was actually completed at Arkadelphia. The motion for a rehearing will be denied.